THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. HEATH A. BAUMAN, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RICHARD A. BOESEN-BERG, Defendant-Appellee.

Fourth District   Nos. 4—90—0065, 4—90—0066 cons.

Opinion filed October 11, 1990.—Rehearing denied November 26, 1990.

John Robinson, State's Attorney, of Sullivan (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellees.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Defendants Bauman and Boesenberg were charged by information with possession of cannabis (between 30 and 500 grams) with intent to deliver (Ill. Rev. Stat. 1987, ch. 56½, par. 705(d)), possession of cannabis (between 30 and 500 grams) (Ill. Rev. Stat. 1987, ch. 56½, par. 704(d)), and armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2). The defendants filed motions to suppress evidence and statements, and the trial court granted the motions following a consolidated hearing. The State appeals, pursuant to Supreme Court Rule 604 (107 Ill. 2d R. 604). The sole issue for review is whether the trial court's order suppressing the evidence and statements was manifestly erroneous.

The following evidence was adduced at the motion hearing. A public park and parking lot open daily to the general public sit directly across the street from Sullivan High School. The park closes at 11 p.m. and the only posted parking regulation prohibits parking after 11 p.m.

Sullivan High School students congregate in the parking lot dur-

ing lunch recess. Mr. John Raymer, principal at Sullivan High School, suspected the occurrence of illegal activities in the parking lot during the lunch recess. He contacted the Sullivan police department, and Police Chief Hansen agreed to order patrols of the parking lot during the lunch hour. The purpose of the patrols was to monitor nonstudents present at the parking lot and mingling with students.

Officer Donald Tipper regularly patrolled the parking lot during the noon hour. He testified he believed his task was to look for nonstudents and determine whether students were involved in illegal activities.

On October 24, 1989, while parked in the parking lot and talking to students, Tipper observed a car in the lot with students gathered around it. The two men in the car were the defendants. Tipper recognized Boesenberg, the passenger, but not the driver, Bauman. Tipper asked the students with whom he was talking whether they recognized the occupants of the car as Sullivan High School students. They did not. Just as the car began to leave the parking lot, Tipper instructed a student to whom he was talking to yell at the car's occupants to "hold up a minute." The student complied and yelled something like "hold up a minute" or "the cop wants to talk to you."

The car stopped immediately. Tipper exited his car and walked toward the defendants' car. As he walked, he said "hold on a minute, I want to talk to you." He testified he raised his voice to be heard, but did not use a belligerent or threatening tone. He never blocked the car's exit or turned on his squad car's siren or lights. He did not threaten the defendants with arrest if they did not stop.

Tipper asked to see Bauman's driver's license and checked its validity. The license was valid and had no outstanding stops or warrants. Tipper asked Bauman why he was in the parking lot and whether he was a Sullivan High School student. Bauman told him he was not a student at Sullivan High School. The officer did not question Boesenberg.

While talking with Bauman, Tipper noticed the smell of burned cannabis emanating from the car's interior. He asked Bauman whether he and Boesenberg had been smoking pot, and Bauman answered in the negative. Tipper then asked him why his eyes were glassy and bloodshot. Bauman did not respond but Boesenberg exited the car, walked around to the driver's side and told Tipper Bauman's eyes always looked red and bloodshot. Tipper again asked whether either had been smoking pot. Bauman remained silent while Boesenberg said "no." Tipper informed the defendants they should not be in the parking lot during the noon hour because they were not Sullivan

High School students. Boesenberg got back in the car and the defendants drove away.

Stacy Huckstep, a student at Sullivan High School, then approached Tipper and told him "she just bought some pot" from the defendants or "they just bought some pot." Tipper knew Stacy and, believing her accusation to be true, he left the parking lot and pursued the defendants. He stopped the defendants several blocks from the school and, for the first time, noticed an "applied for" sticker in the car's back window. He admitted this was not the reason he stopped the defendants.

As Tipper approached the car, he noticed Boesenberg bending forward, as if reaching underneath his seat. The officer informed Bauman he still smelled the odor of burned marijuana. He asked for and received permission to search the car. A pat-down search of Bauman revealed no contraband, nor did the pat-down of Boesenberg. A search of the car netted three marijuana cigarettes, a marijuana smoking device under the passenger seat, and a burned marijuana cigarette.

After advising Bauman and Boesenberg they were under arrest, a second search of Boesenberg revealed three plastic baggies of marijuana in the crotch of his pants. At the police station, after *Miranda* warnings, each defendant separately confessed to possession of cannabis with intent to sell. A search of the car, pursuant to a warrant, located another baggie of cannabis and a butterfly knife.

Huckstep testified a friend told her Boesenberg had pot and planned to sell it to "little kids." This angered Huckstep, and so she told Tipper the defendants had cannabis. She testified Tipper never questioned her or attempted to verify her claim and searched the defendants' car while it was in the parking lot. The parties subsequently stipulated there was no search at the parking lot.

The trial court concluded the encounter in the parking lot was an illegal stop. The court further found Huckstep's information completely lacked credibility ("In other cases involving citizen informants, or informants there must be some inditia [*sic*] of credibility. I don't think there was any at this point in time") and Tipper had no articulable facts supporting probable cause or a reasonable suspicion when he stopped the car. The court therefore suppressed the evidence and statements.

■■ This court will not disturb the trial court's rulings on the motions to suppress unless they were against the manifest weight of the evidence. *People v. Murray* (1990), 137 Ill. 2d 372, 387; *People v. Long* (1983), 99 Ill. 2d 219, 231, 457 N.E.2d 1252, 1257.

The Illinois Supreme Court has divided police-citizen encounters into three tiers. (*Murray*, 137 Ill. 2d at 387.) The first involves an arrest and requires probable cause. The second tier involves a *"Terry"* stop, "a brief seizure that must be supported by a reasonable suspicion of criminal activity." (*Murray*, 137 Ill. 2d at 387.) The last tier involves no coercion or detention and therefore involves no seizure. The last tier is known as the community caretaking function or the public safety function.

"The Supreme Court elaborated on this level of police intrusion in *Terry* when it noted that '[o]bviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.' *Terry v. Ohio* (1968), 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16, 88 S. Ct. at 1879 n.16 ***." *Murray*, 137 Ill. 2d at 387-88.

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (*United States v. Mendenhall* (1980), 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877; *People v. Clark* (1989), 185 Ill. App. 3d 231, 236, 541 N.E.2d 199, 202.) An element of force or of threatened force constitutes the restraint on the freedom to walk away, the essence of a seizure. (*People v. Tilden* (1979), 70 Ill. App. 3d 859, 862, 388 N.E.2d 1046, 1049; *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.) The parking lot encounter did not involve force or threat of force. Nothing in Tipper's words or tone of voice could have led the defendants to conclude they were not free to leave. He never displayed his weapon or activated the lights or sirens on his squad car while in the parking lot. We conclude there was no seizure of the defendants.

Nor was the parking lot encounter between Officer Tipper and the defendants a stop, as defined in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Instead, Officer Tipper was engaged in a community caretaking function. (*Murray*, 137 Ill. 2d at 388.) The purpose of his patrol assignment at the parking lot was to monitor the activities of nonstudents, thereby reducing illegal activities. When the high school students to whom Tipper was talking indicated the defendants were not Sullivan High School students, Tipper was justified in approaching the car and determining whether they were students. His approach of the car and the examination of Bauman's driver's license was not a situation to which the fourth

amendment applied and thus we find nothing constitutionally improper in Tipper's conduct.

The defendants urge the application of *Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391. There, a police officer stopped a car to check the operator's driver's license and the car's registration. He had neither probable cause nor reasonable suspicion to believe the car was being driven in violation of motor vehicle laws or that either of its occupants was subject to seizure for violation of any other law. When he reached the vehicle he observed marijuana in plain view on the car's floor. The Court found the officer's conduct unreasonable because he could articulate no reasonable suspicion of a violation of a law by the car's occupants:

> "[W]e hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment." *Prouse*, 440 U.S. at 663, 59 L. Ed. 2d at 673, 99 S. Ct. at 1401.

The defendants maintain the *Prouse* case is analogous to this case. Tipper, like the officer in *Prouse*, stopped the defendants' car solely to determine their identities. He testified he observed nothing about the vehicle or its occupants that aroused suspicion or formed a basis for probable cause. *Prouse* is distinguishable, however, because the officer there, unlike Officer Tipper, did not act in a community caretaking capacity. Indeed, the officer in *Prouse* indicated he stopped the car because he was bored. " 'I saw the car in the area and wasn't answering any complaints, so I decided to pull them off.' " *Prouse*, 440 U.S. at 650-51, 59 L. Ed. 2d at 665, 99 S. Ct. at 1394.

The State next argues even if the parking lot encounter was a stop, it was a reasonable stop justified by the government's interest in protecting children from drugs. The State's interest in providing such protection is manifested, according to the State, in the statute prohibiting the manufacture, delivery, or sale of controlled substances to persons under 18 years of age on school property. (Ill. Rev. Stat. 1987, ch. 56½, par. 1407.) Because we have concluded the encounter in the parking lot was not a stop, we need not address this argument.

■■ ■ The next question is whether the second stop was constitutionally valid. During the encounter in the parking lot, Tipper learned the defendants were not Sullivan High School students. Upon questioning them, he smelled burned cannabis in their car and observed

Bauman had glassy, bloodshot eyes. This information, coupled with Huckstep's information, provided him with sufficient probable cause to stop the defendants and search their persons and the car. Tipper had no reason to doubt Huckstep's information, nor was he required in these circumstances to further corroborate it.

"Generally, probable cause to arrest exists where the circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution to believe an offense has been committed and that the person arrested committed the offense. (*People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147; *People v. Creach* (1980), 79 Ill. 2d 96, 402 N.E.2d 228.) In determining whether the officer had probable cause, the officer's factual knowledge based on his prior law-enforcement experience is sufficient. (*People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.) Further, probable cause may be founded upon evidence which would not be admissible at trial and which need not be sufficient to establish guilt beyond a reasonable doubt. (*People v. Green* (1980), 88 Ill. App. 3d 929, 410 N.E.2d 1003.) In fact, even hearsay is proper grounds for establishing probable cause. \*\*\* Provided that the person supplying the data is a citizen-informer and not a police informer, the police do not have to establish the informer's prior reliability or to corroborate the information. (*People v. Beto* (1980), 86 Ill. App. 3d 622, 408 N.E.2d 293.)" *People v. Johnson* (1989), 187 Ill. App. 3d 756, 771, 544 N.E.2d 392, 401.

The evidence seized and statements made by the defendants following the consensual search of the car should not have been suppressed. The evidence and the statements were not the "fruits of a poisonous tree," as the first encounter was valid. There was sufficient probable cause to support the stop and search made after the defendants left the parking lot. The trial court's rulings on the motions to suppress are reversed and the causes remanded.

Reversed and remanded.

SPITZ and McCULLOUGH, JJ., concur.