THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
DANIEL W. CARLILE, Defendant-Appellee.

Fourth District No. 4—92—0317

Opinion filed September 30, 1992.—Rehearing denied October 29, 1992.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and Leslie Hairston, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Carey J. Luckman, of Pontiac, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Defendant Daniel W. Carlile was charged with unlawful possession of a controlled substance and unlawful possession of cannabis. (Ill. Rev. Stat. 1991, ch. 56½, pars. 1402(a), 704.) On March 19, 1992, following a hearing in the circuit court of Livingston County, the court entered an order granting defendant's motions to quash his arrest

and suppress evidence of drug paraphernalia. The State appeals, pursuant to Supreme Court Rule 604(a) (134 Ill. 2d R. 604(a)), and has filed an affidavit asserting the court's order substantially impaired its ability to prosecute the case.

We reverse the order appealed. We hold that certain items suppressed were properly received and defendant was properly arrested. We remand for further hearing in regard to other aspects of the relief requested by defendant.

At the suppression hearing, upon being called by defendant, Pontiac police officer Mike Gray testified as follows: (1) on September 8, 1991, he and Officer Bristow were dispatched to defendant's residence on a domestic dispute; (2) when they arrived on the scene they spoke briefly to defendant in the street near the house; defendant indicated he wanted the officers to remove his former girlfriend, Arcelia Jensen, from his apartment; (3) Jensen told them to come into the apartment, where they found her sitting in a chair and crying; (4) the officers informed her that she would have to leave, but she did not immediately leave; (5) they did not try to physically remove her, because they felt they could calm her down and she would leave; (6) after Gray had asked her to leave two or three times, Bristow left, and Jensen told Gray to look behind a stereo speaker; (7) Gray asked her why he should look, but she repeatedly said only that he should "look behind the speaker"; and (8) Gray turned and looked behind the 1½- to 2-foot-tall speaker and saw a tall, plastic smoking pipe, commonly referred to as a "bong," directly behind the speaker.

Gray further testified (1) he then told Jensen he saw what was back there, but did not do anything further except to tell her she still had to leave; (2) Jensen then got up, pulled the pipe from behind the speaker, and placed it in a bag in front of where Gray was standing; (3) she then went into a bedroom, removed a small glass smoking device covered with white residue, from a jewelry box on top of a dresser, and brought it to Gray; (4) she told Gray the objects belonged to defendant and that he should not be using them; (5) Gray allowed her to go into the bedroom, because he believed she was gathering some of her personal effects to take with her; and (6) Gray took the two pipes from her and told her she still had to leave.

Gray said that while still on the scene, he asked defendant to sit in the front seat of the squad car with him, and he told defendant what Jensen had given him. He read defendant his *Miranda* rights, and defendant agreed to waive his rights at approximately 12:20 a.m. At this point, the court interrupted the testimony to indicate it felt that unless the State had other contrary evidence, the defendant was

entitled to suppression of the bong and the other pipe, principally because they were the fruits of an unlawful search which began when Gray looked behind the speaker at Jensen's request. The prosecutor indicated he had no countervailing evidence on this point.

At the request of defense counsel, the court then addressed the question of the propriety of any statements the State may have taken from defendant and of the seizure of any other items which the State may have taken from defendant's house after a subsequent search. The record is not clear as to whether any statements or confessions were taken from defendant or whether any property was seized in the subsequent search. However, during subsequent examination, then being conducted by the prosecutor, Gray indicated that he and another officer secured defendant's apartment until a search warrant could be issued. He said he explained to defendant, who remained in the squad car, that it was taking some time to get the warrant, and at 2:30 a.m., the officer again asked if they could search his apartment. Defendant then agreed to allow the officers to search his apartment. On October 3, 1991, defendant was arrested and charged as previously indicated.

We examine first the propriety of the seizure of the bong and the other pipe. A more detailed explanation of the circuit court's reasoning in suppressing those items is that (1) an improper search of defendant's apartment had been made, because no consent to search had been given by anyone who had authority or legal possession of the premises; and (2) the initial search was at the request of a trespasser whom the officers were there to remove. The court concluded that the officer should not have looked behind the speaker when Jensen first told him to do so, but he should have determined why she wanted him to look, secured the residence, and then obtained a search warrant.

The State argues on appeal that the trial court erred in granting defendant's motions, because no "search" by the police had occurred to which fourth amendment protection applied. The State maintains that the "search," if any, was conducted by a private citizen who put the items in plain view of the officers.

The fourth amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." (U.S. Const., amend. IV.) The Illinois Constitution also prohibits unreasonable searches and seizures. (Ill. Const. 1970, art. I, §6.) A trial court's determination on a motion to suppress evidence will not be overturned on review unless it is con-

trary to the manifest weight of the evidence. *People v. Janis* (1990), 139 Ill. 2d 300, 308, 565 N.E.2d 633, 637.

■ In *Burdeau v. McDowell* (1921), 256 U.S. 465, 65 L. Ed. 1048, 41 S. Ct. 574, the Supreme Court held that the fourth amendment is a limitation only upon the government and, therefore, evidence secured by private searches need not be excluded from a criminal trial even if the search had been illegal. (1 W. La Fave, Search & Seizure §1.8, at 174 (2d ed. 1987).) Moreover, fourth amendment prohibitions do not extend to private individuals who conduct their own inspections or searches without government involvement. *People v. Carini* (1986), 151 Ill. App. 3d 264, 502 N.E.2d 1206.

In *Carini*, the manager of a facility with self-locking storage units warned defendant that if he did not eliminate a foul odor coming from a unit he was renting, the manager would do so. Defendant assured the manager he would clean the unit, but after two weeks, had not done so. The manager then cut the locks off the unit, found a "horrible smelling," sticky amber fluid coming from the trunk of a car parked inside the unit, and called the police. (*Carini*, 151 Ill. App. 3d at 274, 502 N.E.2d at 1212.) The police thereafter discovered two bodies in the trunk. The court affirmed the trial court's determination that the evidence should not be suppressed, because defendant's failure to heed the manager's warning to clean the unit negated any reasonable expectation of privacy defendant may have had, and the discovery of the car was not the result of a governmental search. The court concluded that the inspection by the manager was not a "search" to which the fourth amendment prohibitions would apply, and the manager put the evidence in plain view of the officers.

In *United States v. Kinney* (4th Cir. 1992), 953 F.2d 863, the court determined that a search of a locked closet by defendant's girlfriend, Mary Ann Akers, who was living in the apartment but did not normally have access to the closet, was not a "search" requiring fourth amendment protection. The court noted that even though the police were present during Akers' search of the closet, the private search was not transformed into a government search. The court held that more than the mere presence of a police officer was necessary to constitute the government action required to implicate fourth amendment concerns. *Kinney*, 953 F.2d at 865.

The Indiana Supreme Court has concluded that constitutional prohibitions against unreasonable searches and seizures provide protection from such acts by the government but do not apply to unauthorized acts of private citizens, even where the private citizen has no lawful right to conduct a search. In *Torres v. State* (Ind. 1982), 442

N.E.2d 1021, a burglar stole pornographic photographs from defendant's apartment, depicting a defendant and his girlfriend sexually abusing a three-year-old child. After attempting to extort money from that defendant in exchange for the photographs, the burglar sent the photographs to the police. The trial court denied defendant's motion to suppress the evidence, and the supreme court affirmed.

■ Here, the police officers were clearly in defendant's house at his, at least, implied invitation to enter the house to remove Jensen. In doing so, they were performing a "community caretaking function." (See *People v. Murray* (1990), 137 Ill. 2d 382, 387, 560 N.E.2d 309, 311-12; *People v. Bauman* (1990), 204 Ill. App. 3d 813, 817, 562 N.E.2d 336, 339.) Gray was performing such a function when he remained in the upstairs room with Jensen attempting to get her to leave peacefully. Nothing concerning the deliberation with which Gray proceeded supports the defendant's contention that when Gray looked behind the speaker, he was performing a search. Gray's undisputed explanation of his bodily movement when he looked behind the speaker was that he "turned and looked at it." A natural response by a peace officer in attempting to get a person to peacefully leave a room would be to turn and look at an object if the person he was attempting to persuade asked him to do so.

Defendant maintains Gray should have been careful when Jensen did not answer after he asked her why he should look behind the speaker. We disagree. Even if he had to take several steps to look behind the speaker, we deem his actions were a natural and proper response to the situation confronting him and the performance of his duty. He might have seen something which bore upon why Jensen was reluctant to leave. Gray had no reason to believe that defendant had any substantial expectation of privacy in something which could be seen by an occupant of the room merely by turning and walking a few steps from one place in the room to another. We hold that the circuit court's determination that Gray's observation behind the speaker constituted a search is contrary to the manifest weight of the evidence and contrary to law.

Gray seized the "bong" only after Jensen picked it up and gave it to him. He did not ask or encourage her to do it. She was not his agent in doing so. The fact that Gray was performing a "community caretaking function" in attempting to get Jensen to leave peacefully negates any inference that his continued presence coerced her to bring the item to him. Upon seeing the nature of the bong, Gray had probable cause to seize it.

Similarly, no coercion on Jensen to go into the bedroom to obtain the pipe can be inferred from Gray's continued presence. Clearly, Gray conducted no search to obtain that item. He made no movement to see it. Jensen brought it to him, and he had probable cause to then seize it. By that time he also had probable cause to arrest defendant. Thus, the "bong" and the other pipe should not have been suppressed, and defendant's arrest should not have been quashed.

In attempting to handle the matter summarily and cutting off questioning because of a belief that a search for the "bong" and a seizure of the other pipe tainted all subsequent seizures by the State or the obtaining of any statements or confession, the court prevented the creation of a record sufficient for us to rule upon the propriety of any other such evidence. We determine that fairness to the parties requires remandment for a further evidentiary hearing in that regard.

The order on appeal is reversed, and the cause is remanded for the receipt of further evidence as we have directed.

Reversed and remanded with directions.

McCULLOUGH and KNECHT, JJ., concur.