THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT TODD, Defendant-Appellant.

Fifth District   No. 5—92—0430

Opinion filed September 10, 1993.

836

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Terry M. Green, State's Attorney, of Benton (Norbert J. Goetten, Stephen E. Norris, and Scott A. Manuel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LEWIS delivered the opinion of the court:

Defendant, Robert Todd, was charged with two counts of residential burglary. The trial court denied defendant's motion to suppress evidence, and he was convicted of both offenses at a stipulated bench trial. Defendant was sentenced to concurrent prison terms of 15 and 22 years, respectively, on each count, both terms to run consecutively to a term of imprisonment imposed in a related Franklin County case. (*People v. Todd*, No. 5—92—0407, under separate appeal in this court.) On appeal, defendant raises issues regarding the denial of his motion to suppress evidence and whether the trial court considered an improper factor in sentencing. The State argues that defendant has waived both issues, due to his failure to file either a post-trial motion or a motion to reduce his sentence. We do not find that defendant has waived either issue, under the facts of this case, and we affirm the trial court for the reasons stated below.

On September 22, 1991, at approximately 10 a.m., Benton police officer Melvin Dixon was on patrol in his squad car at the Benton Community Park. The park was open to the public at this time. Dixon noticed a car parked in a public parking lot but did not see anyone in the car at first. The car did not have license plates but did have a registration sticker. After running a check on the registration, Dixon learned that the car was registered to defendant, whom he knew to be a convicted felon. When Dixon approached defendant's vehicle and looked in the passenger-side window, he observed defendant sitting in the driver's seat with a paper for rolling coins in his hands and a cup of change between his legs. On the front floorboard of the car, he observed another plastic cup with change and a box containing several knives, watches, and assorted jewelry. Defendant's eyes were closed, so Dixon could not tell if defendant was sleeping, unconscious, or dead.

Dixon testified at the hearing on defendant's motion to suppress evidence that after he saw the jewelry, change, and knives, he assumed that defendant may have committed a crime, such as burglary or theft, especially since he knew defendant to be a convicted felon. Dixon then called for backup. After the other officer arrived, Dixon went around to the driver's side of defendant's car and pounded on the top of the car to try to awaken defendant. Defendant woke up and rolled down his car window. Dixon testified that he asked defendant to step out of his car, and that defendant then exited the car on his own, without any physical assistance from either officer and without any further requests from the officers. Defendant's testimony was

essentially the same as Dixon's up to this point, but defendant testified that Dixon did not request but, rather, ordered him out of the car.

After defendant exited the vehicle, he left the car door open, so that Dixon observed in plain view on the driver's side floorboard approximately eight or nine empty shell casings from a small caliber handgun. Defendant does not deny that the empty shell casings were in Dixon's plain view after defendant exited the car. As soon as Dixon observed the empty shell casings, he directed defendant to move to the back of the car, for the safety of himself and the other officer. Defendant's testimony is that the other officer bodily restrained defendant as soon as defendant exited the vehicle. Dixon then reached under the driver's seat and found a cloth bag, which felt like it contained a handgun. Dixon unzipped the bag and found a fully loaded .38-caliber pistol inside. He then placed defendant under arrest and had defendant's car towed to the Benton police station, where it was inventoried. Items from two residential burglaries were found in defendant's car and also in his home after a search warrant was issued for the residence. The items seized in the inventory of the car and the later search of defendant's home were the basis of the State's two residential burglary charges against defendant.

The trial court denied defendant's motion to suppress, finding that Dixon had the right to look into defendant's car, since it was parked in a public place, a finding that defendant does not dispute. The court found that Dixon had the right to request that defendant exit his vehicle, but that defendant had the right to refuse that request. The court also found that because defendant voluntarily exited his car, Dixon was able to observe the spent shell casings in plain view. As a result, the officer then reasonably inferred that a gun might be present in the car, since shell casings are empty only after they have been fired from a gun. The court concluded that the reasonable inference of the probability of a gun in the vehicle gave Dixon the right to further search the areas of the car which were immediately accessible to defendant. The trial judge finally found that the legitimate seizure of the handgun gave Dixon probable cause to arrest defendant for the crime of possession of a weapon by a felon.

After the trial court denied defendant's motion to suppress, defendant, who was representing himself, requested to withdraw his plea of not guilty. As the court was advising defendant of his rights when pleading guilty, the State's Attorney interrupted the judge with the following statement:

"Judge, I hate to interrupt you while you are making advisement, but I think, as an officer of this court, and especially since I am dealing with Mr. Todd who is acting here pro se, [*sic*] and I think what Mr. Todd is telling this court, maybe not articulating it, is he is wishing to preserve the issue of his search.

\* \* \*

I think that what Mr. Todd is asking to do at this time would be for us to stipulate to the facts so that he can preserve the issue. And rather than have this court go through with this admonishment and find out 30 days from now Mr. Todd is not wishing to actually plead guilty because that would waive his \* \* \* efforts to preserve his issue, [i]f he wants \* \* \* we will stipulate to the evidence for this court to make the various findings of fact in order that he can have this court make its decision and also preserve his issue."

The trial judge then stated to defendant that it had not accepted defendant's plea of guilty, and that the court would set the case down for a stipulated bench trial rather than allow defendant to enter a plea of guilty that would foreclose any review of the issue of whether the motion to suppress was improperly denied.

On May 4, 1992, the defendant and the State jointly filed a "Stipulation for Bench Trial," the first paragraph of which read:

"It is the desire of the parties to permit the issue of the denial of defendant's Motion to Suppress Evidence \* \* \* to be preserved for Appellate review while allowing for the orderly and timely trying of this cause."

The stipulation then went on to outline the evidence that would be presented by the State if the case came to trial. Based upon the stipulation, the court found defendant guilty of both counts of residential burglary and scheduled the case for a sentencing hearing.

Defendant first argues that his conviction is based upon an illegal search and, therefore, the conviction must be reversed. However, we must first consider the State's argument that defendant's appeal should be dismissed for failure to file a post-trial motion, under the authority of *People v. Johnson* (1991), 214 Ill. App. 3d 1087, 574 N.E.2d 225.

■ In *Johnson*, this court dismissed an appeal for failure to file a post-trial motion, which is mandatory to preserve issues for appeal under section 116—1(b) of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1991, ch. 38, par. 116—1(b); *People v. Johnson* (1991), 214 Ill. App. 3d 1087, 574 N.E.2d 225.) Further, a written post-trial

motion is mandatory to preserve issues for appeal after a bench trial as well as a jury trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The purpose of a post-trial motion is to alert the trial court to trial errors, so that a new trial may be granted, if warranted, without the necessity of an appeal. The post-trial motion also limits the issues reviewable on appeal, which otherwise would be open-ended and unduly burdensome. *People v. Johnson* (1991), 214 Ill. App. 3d 1087, 574 N.E.2d 225.

■ However, there are exceptions to the requirement of a written post-trial motion. One exception, which we find applicable to this case, is where a defendant makes an oral motion for a new trial, or some statement that can reasonably be construed as an oral motion for new trial, and the State does not object to the motion for not being in writing. (*Enoch*, 122 Ill. 2d at 188, 522 N.E.2d at 1131.) The basis of the exception for oral motions lies in the concept of waiver; the State is found to have waived the requirement that the post-trial motion be in writing if it does not object to an oral request for a new trial. *People v. Flynn* (1956), 8 Ill. 2d 116, 118-20, 133 N.E.2d 257, 258.

Although the facts of the case *sub judice* are somewhat different, we believe that the same reasoning applies. Here, the State initially brought to the court's attention the fact that a guilty plea would destroy defendant's right to appeal the denial of his motion to suppress. In order that the issue of the motion to suppress be preserved for review, the State and defendant jointly entered into a stipulation for bench trial, again stating that both parties desired that the issue of the denial of the motion to suppress be preserved for review. The only basis upon which we could possibly find that defendant has waived his right to appeal this issue is that the parties intended only that defendant not lose his right to file a post-trial motion, which continued to be a necessary prerequisite to preserve his appeal on this issue, even though the language of the stipulation did not indicate any such requirement. However, such a finding would require this court to ignore the plain language of the statements made by the State's Attorney at the close of the hearing on the motion to suppress, as well as the clear words of the stipulation itself. We decline to give the words any meaning beyond their common, ordinary meaning. We find that the State, by entering into the stipulation for bench trial, waived the requirement that defendant file a written motion for new trial. Rather, the State agreed to a procedure whereby the stipulation itself served as a written post-trial motion with no requirement for further hearings by the trial court. This finding is supported by the trial

court's acceptance of the stipulation and the following statements by the trial judge after he sentenced defendant:

"You have the right to take an appeal from this decision, not only the sentence that I have imposed, but the finding of guilt after the stipulated bench trial, and *any pre-trial motions that you are unhappy with.*" (Emphasis added.)

The court then went on to advise defendant about the requirement of filing a notice of appeal in order to have the case reviewed by the appellate court. By the judge's statements, it is clear that he did not believe that a post-trial motion was necessary to preserve any issue regarding the motion to suppress, since more than 30 days had already passed since the entry of the judgment of conviction, so that on the date of the sentencing hearing, the time for filing a post-trial motion was already passed. (Ill. Rev. Stat. 1991, ch. 38, par. 116—1(b).) The State did not object to the judge's statement that defendant had the right to appeal *any pretrial motions*, and as a result, the State has waived any requirement that defendant file a written post-trial motion.

■ We now consider the merits of defendant's argument that the officer did not have probable cause to search defendant's car. Defendant correctly states that the issue is whether the observation of spent shell casings on the driver's side floorboard would have led a reasonably prudent officer to believe that a gun or other evidence of a crime was probably in close proximity. Defendant, in essence, argues that Dixon could have assumed that the spent shell casings came from some source other than a gun located in defendant's car. However, defendant's argument ignores the most logical and reasonable inference to be drawn from the presence of the spent shell casings, that they came from a gun located within defendant's immediate access in his car.

A warrantless search is justified where there is probable cause to believe that a crime has been committed, is being committed, or is about to be committed. Probable cause is determined from the knowledge and experience of the officer conducting the search. If the officer is aware of articulable, objective facts that indicate that the existence of criminal activity is more probable than not, then probable cause exists for the search. (*People v. Morgan* (1990), 200 Ill. App. 3d 956, 558 N.E.2d 524.) Officer Dixon was aware that defendant was a convicted felon, who was out of prison and on parole; he initially observed items in defendant's car that could very well have been evidence of a crime, *i.e.*, it was reasonable to infer that the jewelry, watches, and knives came from a burglary or theft; and defendant

was asleep in his car at a public park. Dixon had every right, as defendant concedes, to try to awaken defendant to find out if he needed assistance or medical attention, under the officer's general community-caretaking function. (See *People v. Murray* (1990), 137 Ill. 2d 382, 387, 560 N.E.2d 309, 312.) Furthermore, as the trial judge pointed out, Dixon had the right to ask defendant to get out of his car in order to determine if defendant was fit to drive. (*People v. Murray* (1990), 137 Ill. 2d 382, 393, 560 N.E.2d 309, 314.) Once defendant was out of the car, by his own admission, he left the car door open, so that the shell casings were in plain view to the officer. As we have stated, the most reasonable conclusion the officer could arrive at after viewing the spent shell casings was that defendant was carrying a gun in his car. Because Dixon reasonably believed that defendant was in the process of committing the crime of possession of a weapon by a felon, and because he also reasonably believed that the car might contain evidence of other crimes, such as theft or burglary, he thereby had probable cause to search the areas of defendant's car which were immediately accessible to him.

■ Furthermore, the fact that defendant's testimony at the hearing on the motion to suppress contradicted the officer's testimony is not controlling. Questions of fact, such as the manner in which defendant was requested or ordered to exit the vehicle and whether unnecessary force was used against defendant, are to be decided by the trial court (*People v. Murray* (1990), 137 Ill. 2d 382, 560 N.E.2d 309), whose decision is not to be disturbed unless clearly erroneous. (*People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869.) The trial court in this case resolved the issues of credibility in favor of the officer, and we do not find that decision clearly erroneous.

■ We next consider the State's argument that the defendant is precluded from raising sentencing errors in this appeal, since he did not file a motion to reduce his sentence. The State cites *People v. Macke* (1992), 224 Ill. App. 3d 815, 587 N.E.2d 1113, and *People v. Lewis* (1992), 235 Ill. App. 3d 1003, 602 N.E.2d 492, *appeal allowed* (1993), 148 Ill. 2d 649, 610 N.E.2d 1271, for this proposition. Both *Macke* and *Lewis* hold that where a defendant seeks to appeal *only his sentence,* he is required to first file a motion to reduce sentence with the trial court under section 5—8—1(c) of the Unified Code of Corrections. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(c); *People v. Lewis* (1992), 235 Ill. App. 3d 1003, 602 N.E.2d 492; *People v. Macke* (1992), 224 Ill. App. 3d 815, 587 N.E.2d 1113.) If no motion to reduce sentence is filed and only sentencing issues are raised, then all sentencing issues are waived before the appellate court. (*People v. Lewis*

(1992), 235 Ill. App. 3d 1003, 602 N.E.2d 492; *People v. Macke* (1992), 224 Ill. App. 3d 815, 587 N.E.2d 1113.) It is clear, however, from the language of both cases, that their authority is limited to situations in which a defendant does not appeal any issue other than sentencing. *People v. Lewis* (1992), 235 Ill. App. 3d 1003, 602 N.E.2d 492; *People v. Macke* (1992), 224 Ill. App. 3d 815, 587 N.E.2d 1113.

Since we have already determined that the issue of the denial of defendant's motion to suppress is properly before this court, defendant has not waived review of sentencing issues. In the case at bar, the sentencing error complained of is that the trial court considered an improper factor in sentencing. Another hearing to reconsider the factors used in determining sentence would not promote justice. Rather, where other issues are properly before the court of review, sentencing issues are not waived for failure to file a motion to reduce sentence. (See *People v. Turner* (1992), 233 Ill. App. 3d 449, 599 N.E.2d 104.) Additionally, we note that the *Lewis* case is currently under appeal by the Illinois Supreme Court, and therefore, any further resolution of the question of whether a motion to reduce sentence under section 5—8—1(c) is mandatory, and the exact parameters of when and how motions to reduce sentence are to be filed must be left to the supreme court of Illinois. Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(c); *People v. Lewis* (1992), 235 Ill. App. 3d 1003, 602 N.E.2d 492, *appeal allowed* (1993), 148 Ill. 2d 649, 610 N.E.2d 1271.

■ On the merits of the issue, defendant argues that the trial judge improperly considered the threat of harm as an aggravating factor, and that such consideration was improper because that factor is inherent in the offense of residential burglary. We disagree that the trial court relied on an improper factor in sentencing. Our review of the trial judge's findings in sentencing indicate that he relied most heavily on the factors of defendant's lengthy criminal history and defendant's lack of capacity for rehabilitation and that a lengthy sentence was necessary to deter others. Although the court did mention that it considered the threat of harm presented by defendant's conduct, the record does not demonstrate that consideration of this factor had any real bearing on the length of sentence imposed.

Furthermore, while the court should not rely to a great degree on an aggravating factor that is inherent in the offense (*People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906), the court may consider the *degree* of harm caused or threatened by defendant's conduct, even if the threat of harm is inherent in the offense, as it is in residential burglary. (*People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138.) Our review of the record does not indicate that the

trial judge relied on improper factors in sentencing defendant. Therefore, there is no need for us to determine the weight the judge gave to each sentencing factor in this case. See *People v. Pollard* (1986), 149 Ill. App. 3d 434, 500 N.E.2d 971.

For all of the reasons stated, we affirm the judgment of the trial court.

Affirmed.

MAAG and GOLDENHERSH, JJ., concur.