THE CITY OF HIGHLAND PARK, Plaintiff-Appellant, v. JAMES LEE, Defendant-Appellee.

Second District   No. 2—96—0679

Opinion filed August 6, 1997.

Lawrence R. LaLuzerne, of Rosing, Smith, Ericksen, Zeit & Stanczak, Ltd., of Waukegan, for appellant.

Alan T. Davis, of Fagan, Salon & Associates, of Des Plaines, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, James Lee, was arrested and charged with driving with a blood-alcohol concentration above 0.10 (Highland Park Municipal Code § 71.105A1), driving under the influence of alcohol (Highland Park Municipal Code § 71.105A2), and driving with a revoked license (625 ILCS 5/6—303(a) (West 1994)). The trial court granted defendant's motion to quash the arrest and suppress the evidence and his petition to rescind the summary suspension of his license. The City of Highland Park (City) now appeals. We affirm.

■ We initially must address this court's jurisdiction to hear the City's appeal of the court's order to quash and suppress. The City brings the appeal under Supreme Court Rule 604(a), which provides:

"(a) Appeals by the State.

(1) *When State May Appeal.* In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence.

(2) *Leave to Appeal by State.* The State may petition for leave to appeal under Rule 315(a).

(3) *Release of Defendant Pending Appeal.* A defendant shall not be held in jail or to bail during the pendency of an appeal by the State, or of a petition or appeal by the State under Rule 315(a), unless there are compelling reasons for his continued detention or being held to bail.

(4) *Time Appeal Pending Not Counted.* The time during which an appeal by the State is pending is not counted for the purpose of determining whether an accused is entitled to discharge under section 103—5 of the Code of Criminal Procedure of 1963." 145 Ill. 2d R. 604(a).

While this rule gives the State the right to pursue interlocutory appeals in criminal cases, it has long been held that this right does not extend to municipalities prosecuting village ordinance violations. See, *e.g., Village of Cary v. Pavis,* 171 Ill. App. 3d 1072 (1988). Therefore, in most instances, a municipality cannot take an interlocutory appeal from an order quashing arrest and suppressing evidence.

However, section 16—102 of the Illinois Vehicle Code provides, in part:

"The State's Attorney of the county in which the violation occurs shall prosecute all violations except when the violation occurs within the corporate limits of a municipality, the municipal attorney may prosecute if written permission to do so is obtained from the State's Attorney." 625 ILCS 5/16—102 (West 1994).

■ In this case, the charge of driving while license was revoked was brought as a violation of the Illinois Vehicle Code and not as a violation of a municipal ordinance. The municipal prosecutor for the City has received written permission to prosecute violations of the Illinois Vehicle Code from the State's Attorney of Lake County. Thus, the municipal prosecutor, acting in the place of the State's Attorney, may appeal from the granting of the defendant's motion to quash and suppress, and this court has jurisdiction to review the trial court's order. Thus, we need not revisit *Village of Cary* to determine if the appeal of ordinance violations identical to statutory violations ought to be included in the context of Supreme Court Rule 604(a).

Officer Justin Coulter of the Highland Park police department was patrolling a residential neighborhood at about 1 a.m., on June 27, 1995. He observed a Jeep driving approximately one to two miles per hour southbound on Western Avenue. Coulter pulled to within a car length behind the Jeep and saw a woman walking along the passenger side. Coulter could hear the woman and the person inside the Jeep yelling at each other.

After driving about one car length, the Jeep turned left onto Prairie Avenue, leaving the woman on Western Avenue. Coulter approached the woman and ascertained that, although she was upset, she was otherwise unharmed. Coulter left the woman and followed the Jeep, which was still traveling on Prairie Avenue. Coulter did not observe the Jeep violate any laws during the time that he followed the vehicle.

Coulter then activated his emergency lights and curbed the Jeep. During his subsequent conversation with defendant, who was driving the Jeep, Coulter learned that defendant did not have a valid driver's license. Defendant explained that the woman on Western Avenue was his girlfriend and that they had been fighting. He added that after the fight had started his girlfriend had gotten out of the Jeep and had begun walking. Coulter determined that defendant was intoxicated and arrested him for driving under the influence of alcohol, driving with a blood-alcohol concentration above 0.10, and driving with a revoked license.

Defendant moved to quash his arrest and suppress the evidence and petitioned to rescind the statutory summary suspension of his driver's license. The parties stipulated that the issue to be presented at the hearing on the motion was whether there was a legal basis for Officer Coulter to stop the defendant. After hearing testimony, the court limited argument to the specific area of the officer's "caretaking" function:

> "THE COURT: I think in the interest of expediency the focus is not on the existence of probable cause but the exception that may be appropriate thereto. I think the only exception at this point in time would simply be a caretaking function of the officer. And the question is whether or not Officer Coulter's action falls within the generally acceptable parameters of his caretaking functions under the facts and circumstances. I suggest that any thoughts or arguments be limited to that particular exception to probable cause determination."

The court then found that, while Officer Coulter's actions were not "inappropriate or outrageous," other less intrusive or more appropriate courses of action were available to the officer. Therefore, "by a small margin," the question of reasonableness was to be decided in defendant's favor, and the motion and petition were granted.

■ A trial court's ruling on a motion to suppress should not be overturned on appeal unless it is manifestly erroneous. *People v. Neal*, 109 Ill. 2d 216, 218 (1985). We believe that the trial court's decision to grant defendant's motion and petition was not manifestly erroneous.

■ The Illinois Supreme Court first adopted the theory of the "community caretaking function" of the police in *People v. Murray*, 137 Ill. 2d 382 (1990). In using this term, the court referred to police-citizen encounters in which there is *no coercion or detention and, thus, no seizure. Murray*, 137 Ill. 2d at 387. A seizure occurs, according to the court, only when a police officer uses some means of physical force or show of authority to in some way restrain the liberty of a

citizen. *Murray,* 137 Ill. 2d at 387-88. The appropriate test to determine if a seizure has occurred is whether *a reasonable person would feel free to decline the officer's request for the encounter.* See *Florida v. Bostick,* 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991); *People v. Smith,* 266 Ill. App. 3d 362, 366 (1994). In the absence of a seizure, a defendant's fourth amendment rights are not implicated. *People v. Crocker,* 267 Ill. App. 3d 343, 345 (1994). This function is totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. *Murray,* 137 Ill. 2d at 388. The community caretaking encounter was differentiated from a *"Terry"* stop, a brief seizure, which must be supported by a reasonable suspicion of criminal activity, and an arrest, which must be supported by probable cause. See *Murray,* 137 Ill. 2d at 387.

In *Murray,* two police officers approached a parked vehicle in which the defendant was slumped over the wheel. The officers knocked on the car window to awaken the defendant and asked the defendant to exit the vehicle and produce his identification. After the defendant exited, one of the officers saw a handgun in plain view inside the vehicle, and the defendant was charged with unlawful use of a weapon by a felon. The trial court denied the defendant's motion to quash the arrest and suppress the evidence. Our supreme court affirmed, ruling that the trial court was not manifestly erroneous in finding that no seizure occurred until after the gun was seen, at which time probable cause for arrest arose, and that the officers were appropriately performing a community caretaking function when they approached the vehicle to check on the well-being of the defendant. *Murray,* 137 Ill. 2d at 387.

Illinois courts have found police officers to be engaged in community caretaker functions when they have approached citizens in parking lots (*People v. Todd,* 249 Ill. App. 3d 835 (1993); *People v. Bauman,* 204 Ill. App. 3d 813 (1990); *People v. Salome,* 201 Ill. App. 3d 1081 (1990)), on the street (*People v. Crocker,* 267 Ill. App. 3d 343 (1994); *People v. Zamora,* 203 Ill. App. 3d 102 (1990)), in vehicles when the defendant is a passenger and the driver has been pulled over for a violation (*People v. Smith,* 266 Ill. App. 3d 362 (1994)), and inside the defendant's house when the defendant requested the police to enter the house and escort someone off the premises (*People v. Carlile,* 234 Ill. App. 3d 1063 (1992)). In one case, a police encounter with a man found sleeping in his car in a parking lot was found to be outside the community caretaking function since the officer was acting in furtherance of an investigation of burglary or other suspicious circumstances and ordered, rather than requested, the defendant to get out of the car. See *People v. Hinton,* 249 Ill. App. 3d 713 (1993).

The City relies heavily on *People v. Quigley*, 226 Ill. App. 3d 598 (1992). In *Quigley*, police officers observed two vehicles, one behind the other, approach a stop sign at an intersection. The defendant, who was the driver of the first vehicle, got out of his car, approached the driver's side window of the second car, and yelled at the driver of that vehicle. He then returned to his car and drove away. The second driver then proceeded in a different direction. The officers followed the defendant and, using the squad car's emergency lights, pulled over the defendant to investigate the problem between the defendant and the other driver. The stop ultimately resulted in the defendant's arrest for alcohol-related offenses. *Quigley*, 226 Ill. App. 3d at 599.

The Appellate Court, Fourth District, found that the trial court erred when it granted the defendant's motion to quash arrest and suppress evidence. The court reasoned:

"The officers followed defendant for one block and pulled him over after signaling with overhead flashing lights. Another police car followed the other vehicle so defendant was not singled out to be followed. The officers did not display a weapon or order defendant out of his car. Officer Henson simply approached defendant's vehicle to inquire about the incident at the intersection. A stop in these circumstances was part of the community caretaking function and did not violate defendant's fourth amendment rights.

The defendant exited his running vehicle late at night at a highway intersection. He left the running vehicle unattended, however briefly, and approached the vehicle behind him. He loudly cursed and insulted the driver and obstructed the roadway. He then returned to his vehicle and drove away. It was not unreasonable or overzealous or intrusive for the officers to briefly stop defendant to inquire of his loud, confrontational and bizarre behavior. Not every contact between police and citizens is meant to detect crime. The police have a public safety role which the fourth amendment permits them to perform so long as they do so reasonably and with a minimum of intrusion into the privacy and mobility of the citizenry." *Quigley*, 226 Ill. App. 3d at 603-04.

■ We reject the reasoning employed in *Quigley*. The *Quigley* court, we believe, placed too much reliance on some circumstances indicative of a seizure set forth in *Murray* and in *United States v. Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980). These circumstances were the threatening presence of several officers, the display of the officer's weapon, a physical touching of the citizen, and the use of language or tone of voice indicating that compliance with the officer's request might be compelled. See *Quigley*, 226 Ill. App. 3d at 603. However, that list is not exhaustive; it is merely a short list of possible circumstances that may lead to a finding of a

seizure. The *Quigley* court found that none of the listed factors was present but did *not* address the use of emergency lights to curb the defendant's vehicle. We find that the use of the emergency lights, a factor in both *Quigley* and the case before us, constitutes a show of authority used to restrain the liberty of the defendant. A reasonable person would not feel free to decline such an encounter with a police officer, as the use of the emergency lights is an order to a driver to curb the vehicle. See *Smith*, 266 Ill. App. 3d at 366. A driver's knowing failure to curb his vehicle when given an audible or visual signal to do so by a police officer is a violation of the criminal offense of fleeing or attempting to elude a police officer (625 ILCS 5/11—204 (West 1994)), a Class B misdemeanor, a conviction of which may be followed by a period of license suspension of up to six months, or a violation of the petty offense of failure to yield the right-of-way to an emergency vehicle. See 625 ILCS 5/11—907 (West 1994). It is unreasonable to suggest that a driver could feel free to refuse to curb his vehicle when an officer uses emergency lights, when to refuse knowingly to do so constitutes criminal conduct. The traffic stop in the case before us was a seizure made without probable cause or a reasonable suspicion of criminal activity to support it.

In making its ruling, the trial court puzzled over whether Officer Coulter's actions were the most appropriate and least intrusive actions he could have taken under the circumstances and found that the question of reasonableness lay in defendant's favor. The court's reasoning, which appears to be based on the *Quigley* analysis of reasonableness and intrusiveness, was misplaced to the extent that *Quigley* disregarded *Murray* and the prohibition against a seizure without an articulable suspicion or probable cause. Whether a police officer is acting in his role as a community caretaker does not depend on whether he has taken the "most appropriate" or "least intrusive means" to encounter a citizen. There is no balancing of "reasonableness." The test is whether the officer has "seized" the citizen by, in some way, restraining his liberty. See *Murray*, 137 Ill. 2d at 387-88. Once a seizure has occurred, an officer is not acting in his community caretaker function, even if his original intention had nothing to do with the detection or investigation of a crime.

An appellate court may affirm the judgment of a trial court on a basis not ruled upon by the trial court if the necessary factual basis for the determination is contained in the record. *American National Bank & Trust Co. v. National Advertising Co.*, 149 Ill. 2d 14, 21 (1992). While the trial court granted defendant's motion and petition based incorrectly on a test of reasonableness, we find that the facts in evidence show that Officer Coulter had no articulable suspicion or probable cause to seize the defendant.

Therefore, we affirm the judgment of the circuit court of Lake County.

Affirmed.

BOWMAN and COLWELL, JJ., concur.