# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Smulik*, 2012 IL App (2d) 110110

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JERRY SMULIK, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-11-0110 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | November 18, 2011<br><br>January 6, 2012<br>January 6, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly granted defendant's motion to quash his arrest for DUI based on an anonymous tip provided by a person who claimed to have observed defendant drinking at two bars and then followed him as he drove away, since the arresting officer had no personal knowledge of any facts suggesting defendant was committing or was about to commit a crime at the time the officer parked behind defendant when he stopped at a convenience store and the officer's personal observations corroborated only the noninculpatory aspects of the tip, namely, that a vehicle fitting a particular description could be found at a certain location. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-DT-2819; the Hon. William I. Ferguson, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, and Lawrence M. Bauer and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Earl A. Vergara, of Ramsell & Associates, LLC, of Wheaton, for appellee.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.

Justices McLaren and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1 The State appeals from an order of the circuit court of Du Page County granting the motion of defendant, Jerry Smulik, to quash his arrest for driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(1), (a)(2) (West 2008)) and to suppress evidence. We affirm.

¶ 2 At the hearing on his motion, defendant testified that on the evening of Friday, June 5, 2009, he dined with a friend, Kimberly Woodhall, at Volare's Restaurant. Defendant had two glasses of wine with dinner, and he left the restaurant at about 11:30 p.m. after having an argument with Woodhall. He drove to a bar called "Redstone," where he had a glass of wine. He ordered another glass of wine at Redstone, but did not finish it. After leaving Redstone, defendant drove to a gas station. He testified that he did not go there to purchase gasoline. Rather, he pulled into the gas station to "cool[ ] down a bit" from his argument with Woodhall. He parked in a marked space alongside the main building and carwash. After parking, he turned off the engine and had a cigarette. There were no vehicles parked in the other spaces alongside the building. Suddenly, he saw a police car's emergency lights behind him. Then he saw another police car to the left. The police car that had pulled in behind defendant's vehicle was about 15 feet away, and defendant "really couldn't back up." Two police officers–one male and one female–approached defendant and told him to get out of the vehicle.

¶ 3 Oakbrook Terrace police officer Victoria Johnson testified that on June 6, 2009, at about 12:30 a.m., she received a dispatch regarding "a possible DUI with a complainant following." Johnson was advised that the complainant had observed the subject drinking at Redstone and was concerned about him driving. The complainant thought that the subject was drunk. The complainant was following the subject–who was driving a silver Jeep–and

she[1] relayed to police the vehicle's license plate number and location. Johnson located a vehicle fitting the description of the subject's vehicle at a gas station. There were three marked parking spaces by a carwash. The subject's vehicle was parked in the space farthest from the carwash and there were vehicles in the other two spaces. With her emergency lights activated, Johnson pulled into the gas station and parked at an angle behind the subject's vehicle. Johnson's vehicle was about seven feet away from the subject's, and she did not believe that her vehicle was positioned so as to block the subject's. Johnson approached the vehicle and discovered defendant seated inside it. The keys were in the ignition. Defendant had bloodshot eyes and Johnson detected the odor of alcohol coming from him. When Johnson made contact with defendant, two other police officers had arrived, or were arriving, at the gas station in separate vehicles. After speaking with defendant, Johnson spoke with the complainant, who had followed defendant to the gas station. The complainant told Johnson that she had seen defendant drinking wine and vodka at the Volare Restaurant and then at Redstone. Johnson then returned to defendant's vehicle and, during the conversation that followed, defendant indicated that he had wine and "vodka grapefruit" at the Volare Restaurant. He had the same drinks at Redstone.

¶ 4    On appeal from a trial court's ruling on a motion to quash and suppress, the reviewing court "will accord great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence." *People v. Close*, 238 Ill. 2d 497, 504 (2010). However, the trial court's ultimate decision to grant or deny the motion is subject to *de novo* review. *Id.* A defendant moving to quash and suppress bears the burden of establishing a *prima facie* case that he or she was doing nothing unusual to justify the intrusion of a warrantless search or seizure. *People v. Linley*, 388 Ill. App. 3d 747, 749 (2009). "If the defendant makes the required showing, the burden shifts to the State to present evidence to justify the search or seizure." *Id.*

¶ 5    In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court held that the public interest in effective law enforcement makes it reasonable in some situations for law enforcement officers to temporarily detain and question individuals even though probable cause for an arrest is lacking. *Terry* authorizes a police officer to effect a limited investigatory stop where there exists a reasonable suspicion, based upon specific and articulable facts, that the person detained has committed or is about to commit a crime.

¶ 6    Initially, it is necessary to determine at what point a seizure occurred. We have observed:

"A particular encounter constitutes a seizure for fourth amendment purposes when, considering all the surrounding circumstances, the police conduct would have communicated to a reasonable person that the person was not free to decline the officer's requests or otherwise end the encounter. [Citation.] Additionally, either the police must use physical force or the defendant must submit to the assertion of police authority." *Village of Mundelein v. Minx*, 352 Ill. App. 3d 216, 219 (2004).

In *City of Highland Park v. Lee*, 291 Ill. App. 3d 48 (1997), we held that, when a police

___

[1]The record reveals that the complainant was female. It is not clear whether Johnson knew the complainant's gender when responding to the dispatch.

officer activates his or her emergency lights to curb a vehicle, a reasonable person in the driver's position would not feel free to decline the encounter with the officer. *Id.* at 54. In *Minx* we extended the rule to cases such as this one, where, with his or her vehicle's emergency lights activated, a police officer pulls up behind a parked vehicle. *Minx*, 352 Ill. App. 3d at 220; see also *Lawson v. State*, 707 A.2d 947, 951 (Md. Ct. Spec. App. 1998) ("Few, if any, reasonable citizens, while parked, would simply drive away and assume that the police, in turning on the emergency flashers, would be communicating something other than for them to remain."). When Johnson pulled in behind defendant's vehicle with her own vehicle's emergency lights activated, defendant made no attempt to drive off. He therefore submitted to the encounter and was seized at that point. *Minx*, 352 Ill. App. 3d at 220 ("when [the defendant] noticed the emergency lights, he submitted to them and did not leave").

¶ 7        At the point at which the seizure occurred, Johnson had no personal knowledge of any facts suggesting that defendant was committing or was about to commit a crime. In *Linley*, we summarized the general principles that apply when a *Terry* stop is based on facts not personally known to the officer who effects the stop. We observed:

> "An investigatory stop need not be based on personal observations by the officer conducting the stop (or by those officers whose knowledge is imputed to the officer conducting the stop). [Citation.] A stop may also be based on information received from members of the public. [Citation.] However, the informant's tip must bear ' "some indicia of reliability" ' in order to justify the stop. [Citation.] '[A] reviewing court should consider the informant's veracity, reliability, and basis of knowledge.' [Citation.] Whether a tip is sufficient to support a stop is not determined according to any rigid test but rather depends on the totality of the circumstances. [Citation.]

> The nature of the informant is relevant. All other things being equal, information from a concerned citizen is ordinarily considered more credible than a tip from an informant who provides information for payment or other personal gain. [Citation.] Another significant factor in determining the reliability of a tip received from a member of the public is whether, prior to conducting a *Terry* stop, the officer is aware of facts tending to corroborate the tip. [Citation.] This court has observed that '[c]orroboration is especially important when the informant is anonymous [citation] and is even more important when the anonymous tip is given by telephone rather than in person.' [Citation.] There is authority, however, that a tip conveyed via an emergency telephone number–a 911 call for instance–should not be considered 'truly anonymous,' even if the caller does not specifically identify himself or herself. [Citation.] The rationale is that such a caller is likely aware that, because the authorities often record emergency calls and have the means to instantly determine the telephone number from which a call was placed, they may therefore be able to determine the caller's identity. That an informant has placed his or her anonymity at risk may be considered in assessing the reliability of the tip. [Citations.]" *Linley*, 388 Ill. App. 3d at 750-51.

¶ 8    Here the stop was based on a tip received from an informant.[2] The tip was conveyed to Johnson by a dispatcher; it does not appear that Johnson spoke with the informant until *after* initiating the *Terry* stop by parking her police car, with its emergency lights activated, behind defendant's vehicle. Accordingly, only the information relayed by the dispatcher to Johnson is germane to the question of whether the stop was supported by a reasonable suspicion that defendant had committed or was about to commit a crime. What Johnson knew based on the dispatch was that the informant had observed an individual drinking at an establishment called Redstone. The informant thought that the subject of the tip was "drunk," and she was "concerned about him driving." The subject was driving a silver Jeep, and the informant, who was following him, advised police of the vehicle's location and license plate number. There is no evidence that the informant provided her name or that she contacted the police through an emergency number. Thus the tip must be treated as an anonymous one, and its reliability hinges on the existence of corroborative details observed by the police. In this regard, the evidence falls short.

¶ 9    When Johnson initiated the *Terry* stop, her personal observations corroborated only noninculpatory aspects of the tip–that a vehicle fitting a certain description would be found at a particular location. Two United States Supreme Court decisions, *Florida v. J.L.*, 529 U.S. 266 (2000), and *Alabama v. White*, 496 U.S. 325 (1990), teach that corroboration of such details is not enough to establish the requisite degree of reliability. In what it acknowledged was a close case, the *White* Court upheld a *Terry* stop that stemmed from an anonymous telephone call indicating that the defendant "would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case." *White*, 496 U.S. at 327. Police observed a vehicle that matched the one described by the caller and that was parked in front of the building at 235 Lynwood Terrace. They later observed the defendant drive away in the vehicle, and they followed her as she proceeded along the most direct route to Dobey's Motel. The police stopped the vehicle just before it would have reached the motel. In upholding the stop, the *White* Court observed that it was not "unreasonable to conclude in this case that the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller." *Id.* at 332. The Court added:

> "We think it also important that *** 'the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.' [Citation.] The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former. Anyone could have 'predicted' that fact because it was a condition presumably existing at the time of the call. What was important was

_____

[2]Although the word "informant" carries the connotation of "a person in the underworld or a person on its periphery" (2 Wayne R. LaFave, Search and Seizure § 3.3, at 98 (4th ed. 2004)), it is convenient here to use the word in the broader sense of any person providing information to police. *Id.*

the caller's ability to predict respondent's *future behavior*, because it demonstrated inside information–a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. [Citation.] When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." (Emphasis in original.) *Id.*

¶ 10    In *J.L.*, the Court held that an anonymous tip that a young black male standing at a particular bus stop was carrying a firearm did not bear sufficient indicia of reliability to justify a *Terry* stop of a person fitting that description who was waiting at the bus stop in question. The *J.L.* Court stressed that the anonymous tip "provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility." *J.L.*, 529 U.S. at 271. The *J.L.* Court concluded that, "[i]f *White* was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line" (*id.*), and that is true here as well. The anonymous tip in this case similarly lacked the predictive value that was essential to the outcome in *White*. The informant did not predict anything; she merely reported contemporaneous observations as to the description and location of a vehicle she was following.[3]

¶ 11    We note that there is authority that the threat that intoxicated drivers pose to public safety justifies some relaxation of the corroboration requirement. See *People v. Shafer*, 372 Ill. App. 3d 1044, 1052-53 (2007). Courts taking this view have distinguished anonymous tips concerning drunk drivers from tips concerning individuals carrying weapons. In this regard, the *Shafer* court relied, in part, on *Rutzinski*, in which the Wisconsin Supreme Court cited the following passage from *State v. Boyea*, 765 A.2d 862 (Vt. 2000):

" 'In contrast to the report of an individual in possession of a gun *** an anonymous report of an erratic or drunk driver on the highway presents a qualitatively different level of danger, and concomitantly greater urgency for prompt action. In the case of a concealed gun, the possession itself might be legal, and the police could, in any event, surreptitiously observe the individual for a reasonable period of time without running the risk of death or injury with every passing moment. An officer in pursuit of a reportedly drunk driver on a freeway does not enjoy such a luxury. Indeed, a drunk driver is not at all unlike a "bomb," and a mobile one at that.' " *Rutzinski*, 2011 WI 22, ¶ 35, 623

---

[3]*State v. Rutzinski*, 2001 WI 22, ¶ 16, 623 N.W.2d 516, suggests that such contemporaneous reporting by an informant indicates the basis for the informant's knowledge of a defendant's erratic driving. The court offered no explanation, however, of how a contemporaneous report of information readily observable by anyone traveling the same route as the defendant demonstrated the *veracity* of an anonymous informant. See *J.L.*, 529 U.S. at 271 ("The anonymous call concerning [the defendant] provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility.").

N.W.2d 516 (quoting *Boyea*, 765 A.2d at 867).

That reasoning does not apply here. Defendant's vehicle was not moving and Johnson could have attempted to initiate a consensual encounter in order to determine whether the tip relayed by the dispatcher was reliable. See generally *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006). The urgency that would have existed if defendant's vehicle had been in motion was absent here.

¶ 12   For the foregoing reasons the judgment of the circuit court of Du Page County is affirmed.

¶ 13   Affirmed.