THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID LAAKE, Defendant-Appellant.

Third District   Nos. 3—03—0419, 3—03—0473 cons.

Opinion filed May 4, 2004.

Peter W. Church (argued), of McCarthy, Callas, Fuhr & Ellison, P.C., of Rock Island, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (Lawrence M. Bauer and Terry A. Mertel (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

David Laake underwent a statutory summary suspension of his driver's license in connection with a driving under the influence (DUI) arrest. He filed motions to quash his arrest and rescind the summary suspension. The circuit judge conducted a hearing and denied both motions (as well as Laake's motion to reconsider). Laake then filed this appeal, claiming the motions should have been granted because the arresting officer obtained the State's DUI evidence through an unreasonable seizure. He has consolidated an appeal from his DUI conviction. We affirm.

## BACKGROUND

The evidence from the hearing on Laake's motions is contained in an agreed statement of facts. Deputy Tim Chastain, from the Rock Island County sheriff's department, was the only witness to testify at the hearing.

Chastain testified that on December 17, 2002, at approximately 3 a.m., he received a report from police dispatch of a possible intoxicated driver heading south on Route 150 from Route 6. The motorist who had called to make the report identified the suspect vehicle as a dark-colored passenger car, possibly a Chevrolet Celebrity (although the

motorist was not positive about the make and model). When Chastain received the report from police dispatch, he was located near Route 150 and the Henry County line. Thus he headed northbound on Route 150 and checked all the way to Route 6. He did not see any vehicles in that area. Then he checked 104th Street south of Route 150 and observed a dark green Saturn vehicle stopped on the shoulder of the southbound lane with its brake lights on. He located the vehicle at approximately 3:16 a.m.

Chastain pulled in behind the vehicle, stopped his squad car, and activated the car's overhead emergency lights. He testified that his purpose in stopping behind the Saturn was to check on the welfare of its driver. He acknowledged that the driver would have been able to see the flashing emergency lights and that he (Chastain) activated the lights as a precaution to alert other motorists of his squad car. The area was isolated and not well lighted. The area was also near a curve, although it was not in the curve's immediate proximity. In addition to overhead emergency lights, Chastain's squad car was equipped with flashing hazard or warning lights.

Chastain approached the Saturn and identified the driver as David Laake by his Illinois driver's license. Chastain testified that during his initial contact with Laake, he detected a strong odor of an alcoholic beverage coming from inside the Saturn. He also noticed that Laake used slurred speech and had glassy, bloodshot eyes. The front passenger-side tire of the Saturn was flat, and Chastain asked Laake if he hit something in the roadway. Laake said he did not know; he was simply driving southbound on 104th Street when the tire suddenly went flat. Chastain asked Laake how long he had been sitting on the roadside, and he said approximately 5 to 10 minutes. Chastain asked if he had been on Route 6 in front of the airport before driving to his current location, and Laake said yes. Then Chastain mentioned the report of a possible intoxicated driver, and he asked how much alcohol Laake had consumed that evening. Laake said he had consumed a couple of drinks.

At that point Chastain had Laake step out of the Saturn for some field sobriety tests. He conducted the horizontal gaze nystagmus test, the one-leg-stand test, and the walk-and-turn test. According to Chastain's testimony, Laake failed all three tests. Chastain also performed a portable or preliminary breath test, which produced a reading of 0.149. He consequently arrested Laake for driving under the influence of alcohol.

After hearing this evidence, the judge found that Chastain initiated legitimate interaction with Laake and thus that the ensuing discovery of DUI evidence was valid. Accordingly, the judge denied

Laake's motions to quash and rescind. During subsequent trial proceedings, Laake was found guilty of DUI. These consolidated appeals followed.

## STANDARD OF REVIEW

■ A judge's ruling on a petition to rescind a statutory summary suspension is entitled to deference and will not be reversed unless it is against the manifest weight of the evidence. *People v. Carlson*, 307 Ill. App. 3d 77 (1999); *People v. Gerwick*, 235 Ill. App. 3d 691 (1992) (applying the manifest weight standard where the parties submitted an agreed statement of facts). A ruling is against the manifest weight of the evidence if the opposite conclusion is clearly apparent from the record. *Carlson*, 307 Ill. App. 3d 77.

## ANALYSIS

■ The fourth amendment to the United States Constitution declares that "[t]he right of the people to be secure in their persons, *** against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. Accordingly, Illinois courts have generally limited permissible police-citizen encounters to three circumstances: (1) an arrest supported by probable cause; (2) a brief investigatory stop based on a reasonable and articulable suspicion of criminal activity; and (3) interaction for purposes of community caretaking or public safety. *People v. Hinton*, 249 Ill. App. 3d 713 (1993). The community caretaking function does not apply if the citizen is detained or subjected to criminal investigation. See *Hinton*, 249 Ill. App. 3d 713.

Deputy Chastain's initial encounter with Laake does not fit into the first or second categories. By Chastain's own admission he initiated the encounter for community caretaking purposes. Laake claims, however, that the encounter does not qualify as community caretaking because Chastain effected a detention from the outset by activating his overhead emergency lights. In Laake's words: "[I]t is almost universally understood by operators of motor vehicles that the police officer's activation of the overhead emergency lights, when apparently directed at the individual driver, is a command to stop or remain stopped."

■ The standard for determining whether a detention has occurred during a police-citizen encounter is "whether a reasonable, innocent person in the circumstances would believe that he or she would be free to leave." *People v. Woodson*, 220 Ill. App. 3d 865, 873 (1991). If the answer is no, the citizen was detained for fourth amendment purposes. Courts must evaluate " 'all of the circumstances surrounding the incident' " when making this determination. *People v. Brownlee*, 186 Ill. 2d 501, 517 (1999), quoting *United States v. Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980).

■ We agree with Laake's contention that a police officer's use of overhead emergency lights, when directed at a particular person, would be interpreted by that person as a command to stay put. This view accords with decisions from at least three other jurisdictions. See *State v. Morris*, 276 Kan. 11, 72 P.3d 570 (2003) (officers activated emergency lights behind a vehicle parked with its engine running on a rocky, jetty-breaker area of a lake); *State v. Donahue*, 251 Conn. 636, 742 A.2d 775 (1999) (officer activated flashers behind a vehicle that pulled into the parking lot of a closed business); *State v. Burgess*, 163 Vt. 259, 657 A.2d 202 (1995) (officer activated emergency lights and approached a vehicle in a lawful "pull-off area").

The State's contrary argument stems from the fact that Laake had a flat tire. According to the State, a reasonable person with a flat tire would equate a police officer's arrival with roadside assistance, not a detention. But Laake's flat tire was on the front passenger side of his vehicle, and thus a reasonable person could rightly wonder if the approaching officer even knew about it. Additionally, the record is devoid of any facts that would have signaled the flat tire to Chastain (*e.g.*, hazard lights or the motorist out on the roadside changing the tire). Furthermore, the record shows that Chastain's flashing emergency lights were particularly directed at, and visible to, Laake. Under these circumstances, we conclude that a reasonable person in Laake's position would have felt compelled to stay put for Chastain's inquiries.

This conclusion, however, does not end our analysis. Although Laake was technically detained, the detention did not violate the fourth amendment unless it was unreasonable. U.S. Const., amend. IV; *cf. People v. Smith*, 346 Ill. App. 3d 146 (2004) (finding an emergency exception to the requirement that a seizure be supported by either probable cause to arrest or a reasonable suspicion of criminal activity). Chastain testified that his purpose in stopping behind the Saturn was to check on the welfare of its driver. We see nothing wrong with this purpose. Police officers routinely provide roadside assistance in addition to conducting criminal investigation. Such assistance is designed to ensure public safety, and we do not believe that any concomitant technical detention is unreasonable.

Laake doubts the genuineness of Chastain's asserted purpose, arguing that Chastain really stopped behind him to conduct an investigation. The trial judge considered this argument and ultimately found that Chastain's purpose was to check on Laake's welfare. Having reviewed the record, we cannot say that an opposite conclusion is clearly apparent.

351

## CONCLUSION

For the foregoing reasons, the judgment of the Rock Island County circuit court is affirmed.

Affirmed.

SLATER and SCHMIDT, JJ., concur.