# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Dittmar*, 2011 IL App (2d) 091112

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JONATHAN M. DITTMAR, Defendant-Appellee. |
| District & No. | Second District<br>Docket Nos. 2–09–1112, 2–09–1304 cons. |
| Filed | June 15, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's judgments quashing defendant's arrest for DUI, suppressing evidence and rescinding the statutory summary suspension of his license were reversed, since the trial court erred in quashing defendant's arrest and suppressing evidence based on its conclusion that the community-caretaking doctrine did not justify the deputy sheriff stopping behind defendant's car with his emergency lights activated, since the deputy observed defendant's vehicle going slowly and then stopping on the side of the road in the early morning hours, the driver and passenger got out of vehicle and traded positions, the deputy's public safety concerns justified his actions in checking on the well-being of the occupants and the condition of the vehicle, and his observations of defendant's suspected intoxication provided justification for defendant's detention and ultimate arrest, and the trial court's statement in granting defendant's petition to rescind the statutory summary suspension that the deputy lacked reasonable grounds to believe defendant was under the influence was erroneous where the video of the stop showed defendant slurring his words, struggling to keep his balance and failing the sobriety tests. |

| Decision Under Review | Appeal from the Circuit Court of Stephenson County, No. 08–DT–109; the Hon. James M. Hauser, Judge, presiding. |
|---|---|
| Judgment | Reversed and remanded. |
| Counsel on Appeal | John H. Vogt, State's Attorney, of Freeport (Stephen E. Norris and Rebecca E. McCormick, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | Thomas A. Lilien and Sherry R. Silvern, both of State Appellate Defender's Office, of Elgin, and Jenette M. Schwemler, of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellee. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion. Justices Bowman and Schostok concurred in the judgment and opinion. |

## OPINION

¶ 1      The State appeals from the orders of the circuit court of Stephenson County (1) granting the motion by defendant, Jonathan Dittmar, to quash his arrest and suppress evidence, (2) granting defendant's motion for leave to file, outside the 90-day statutory period (625 ILCS 5/2–118.1(b) (West 2006)), a petition to rescind his statutory summary suspension, and (3) granting defendant's petition to rescind his summary suspension. In case number 2–09–1112, the State appealed the suppression order. In case number 2–09–1304, the State appealed the orders granting defendant leave to file his petition to rescind and granting the petition. We consolidated the appeals and now reverse and remand.

¶ 2      I. Case Number 2–09–1112: Motion to Quash and Suppress

¶ 3      On September 7, 2008, defendant was arrested and ticketed for driving under the influence (DUI). On May 19, 2009, defendant filed a motion to quash his arrest and suppress evidence. The motion was heard on August 14, 2009.

¶ 4      The sole witness for the defense was defendant. He testified that, early in the morning on September 7, 2008, he was in his vehicle when a squad car pulled up from behind and activated its overhead emergency lights. At that point, defendant did not feel free to leave. When the police officer stopped behind him, defendant had not committed any traffic

offenses or otherwise broken the law. Defendant testified that the police investigated him for DUI and ultimately arrested him.

¶ 5        The parties stipulated that, if called as a witness, Stephenson County sheriff's deputy Shan MacAdam, the arresting officer, would testify as follows:

"While on routine patrol[,] I was traveling north bound on Route 26 north of McConnell Road when I observed an oncoming south bound vehicle. The vehicle was traveling at a slow speed, [and] the right turn signal was activated a very short distance before the vehicles met. The vehicle, a white Chevrolet Cavalier convertible[,] had slowed greatly and was pulling to the shoulder of the roadway as I passed. The squad [car] was also traveling slowly[,] and I observed a white hat on the head of the driver.

After passing the vehicle[,] I turned the squad [car] around to check if the vehicle was having mechanical problems, or if there were problems with the occupants. As I approached the rear of the car[,] I observed the subject with the white hat walking from the driver door around the rear of the car and to the right passenger door. Another subject from the right side of the car was walking around the rear of the car to the driver door. Both doors were open as they changed sides of the car.

The subject wearing the white hat got into the passenger seat, while a female stood next to the open driver door as she watched the squad [car] stop behind her. She got into the driver seat as I stopped directly behind the white Chevrolet, bearing TX08/777CCJ.

I approached the driver door, which was still open, and immediately noted the strong odor of an alcoholic beverage flowing from the interior."

¶ 6        The parties introduced into evidence the video of defendant's stop as recorded by Deputy MacAdam's dashboard camera. The clock on the video shows that the stop occurred at 5:58 a.m. The picture quality of the video is poor (as the parties and the trial court recognized), but it suffices to show the activity taking place. The ambient light was dim; either the sun had not yet risen or there was significant cloud cover. The area appeared rural; there were no street lights. No lights appeared to be activated on defendant's car. Traffic was sparse, with no more than 10 cars passing by during the entire encounter.

¶ 7        The video corroborates MacAdam's testimony as to the sequence of events, *i.e.*, that defendant's car was already stopped when MacAdam pulled up behind it. What MacAdam's stipulated testimony did not convey is that, as he pulled onto the shoulder behind defendant's car, he activated his overhead emergency lights and gave the dispatcher the make, model, and license plate number of the car.

¶ 8        The video further shows that, as MacAdam came to a halt behind the stopped car, the woman who had been standing near the open driver's door sat in the driver's seat but kept the door open. MacAdam exited the squad car and, as he approached the woman, said, "Good morning. Is everything all right? What's the scoop?" After asking for driver's licenses from the woman and defendant, MacAdam asked defendant to step out of the car. When defendant complied, MacAdam asked him to perform field sobriety tests. After defendant failed the initial tests and refused to take the remainder, he was arrested. Approximately 36 seconds elapsed between MacAdam's activating his emergency lights and reaching the driver's door of the car.

¶ 9 Defendant argued to the trial court that, once MacAdam activated his emergency lights, he effected a seizure of defendant. Once he was seized, defendant argued, the encounter was by definition not a community-caretaking encounter. For support, defendant cited this district's comment in *City of Highland Park v. Lee*, 291 Ill. App. 3d 48, 54 (1997), that "[o]nce a seizure has occurred, an officer is not acting in his community caretak[ing] function, even if his original intention had nothing to do with the detention or investigation of a crime." Defendant further argued that MacAdam lacked reasonable and articulable suspicion of criminal activity. Defendant cited *People v. Gray*, 305 Ill. App. 3d 835, 838-39 (1999), for its holding that, without more, a driver's act of switching places with a passenger does not supply grounds for a seizure. Defendant did not question that MacAdam's interaction with defendant gave MacAdam probable cause to arrest him for DUI.

¶ 10 The State replied that, because defendant's vehicle was already stopped, MacAdam's pulling behind the vehicle and activating his emergency lights could not have effected a seizure. The State alternatively argued that any seizure was justified as an exercise of community caretaking, because MacAdam had cause to attempt to "mak[e] sure that all the individual[s] [were] okay on the side of the road." The State contended that MacAdam's use of his emergency lights was consistent with a community-caretaking purpose because it served to alert passing drivers to the cars stopped on the roadway shoulder.

¶ 11 The trial court, citing *People v. Luedemann*, 222 Ill. 2d 530, 558 (2006), found that defendant was seized once MacAdam activated his emergency lights. Without elaborating, the court also found that MacAdam lacked reasonable and articulable suspicion of criminal activity. As for the State's proffered community-caretaking rationale, the court said:

"Now I also comment that the Court believes that [MacAdam] acted properly to check on the car that had pulled over to the side of the road in the early morning hours; however[,] based on the Supreme Court's opinion in *Luedemann*, activating the overhead lights on the squad made the stop a seizure, thus implicating [defendant's] 4th Amendment rights."

The court granted defendant's motion to quash his arrest and suppress evidence.

¶ 12 The State filed a motion to reconsider. The State now conceded that defendant was seized when MacAdam, his emergency lights activated, pulled behind defendant's stopped vehicle.[1] Citing several decisions, including *Luedemann*, *People v. McDonough*, 395 Ill. App. 3d 194 (2009), *aff'd*, 239 Ill. 2d 260 (2010), *People v. Robinson*, 368 Ill. App. 3d 963 (2006), and

---

[1]The State may have believed that this concession was compelled given the supreme court's remark in *Luedemann* that, when the officer in that case approached the defendant's parked car, he "did nothing to signal that compliance was expected, such as turning on his overhead flashing lights as a show of authority." *Luedemann*, 222 Ill. 2d at 558; see also *People v. Laake*, 348 Ill. App. 3d 346, 350 (2004) ("a police officer's use of overhead emergency lights, when directed at a particular person, would be interpreted by that person as a command to stay put"). In *People v. McDonough*, 239 Ill. 2d 260, 271 (2010), decided after the State filed its briefs in this appeal, the supreme court declined to "decide whether a police officer's use of emergency lights, either alone or in combination with other law enforcement techniques, always constitutes a seizure within the fourth amendment."

*People v. Laake*, 348 Ill. App. 3d 346 (2004), the State argued that the seizure was justified on community-caretaking grounds. The trial court denied the motion to reconsider. The State filed a certificate of impairment and a timely notice of appeal.

¶ 13 As to our standard of review, we note that, though defendant testified that he had not broken the law when MacAdam approached, that testimony did not create a factual conflict relevant to the ground on which we reverse, namely, that MacAdam had a valid community-caretaking purpose for checking on the occupants of the stopped car. Consequently, our review is *de novo*. See *People v. Gilbert*, 347 Ill. App. 3d 1034, 1038 (2004) (where an appeal from a suppression ruling involves no dispute of historical fact, the appellate court reviews *de novo* the trial court's application of the law to the undisputed facts).

¶ 14 The State continues to concede "that when *** MacAdam pulled his squad car behind the defendant's vehicle, with emergency lights activated, there was a seizure." The State also does not argue that MacAdam, prior to approaching the car and smelling the odor of an alcoholic beverage, had reason to believe that a traffic infraction had occurred. Defendant, for his part, does not dispute that, as MacAdam testified, MacAdam smelled the odor of an alcoholic beverage "immediately" upon reaching the open driver's door of the car. Nor does defendant dispute that the odor justified MacAdam in detaining him further, resulting ultimately in his arrest.

¶ 15 The point in contention is, instead, whether there was sufficient cause for MacAdam's actions before he detected the odor of alcohol coming from defendant's car. The question, then, is whether there was justification for MacAdam to stop behind defendant's car, thereby effecting a seizure, and to continue the detention while he approached the driver's door to speak to the occupants of the car. We agree with the State that MacAdam's actions were justified as a community-caretaking endeavor.

¶ 16 In *People v. McDonough*, 239 Ill. 2d 260, 272 (2010), the supreme court identified a two-prong test for judging whether an encounter qualifies as a community-caretaking endeavor:

"First, law enforcement officers must be performing some function other than the investigation of a crime. [Citations.] In making this determination, a court views the officer's actions objectively. [Citation.] Second, the search or seizure must be reasonable because it was undertaken to protect the safety of the general public. [Citation.] 'Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances.' [Citation.] The court must balance a citizen's interest in going about his or her business free from police interference against the public's interest in having police officers perform services in addition to strictly law enforcement."

¶ 17 Here the trial court found that MacAdam "acted properly to check on the car that had pulled over to the side of the road in the early morning hours." The court, however, rejected the State's community-caretaking theory because MacAdam's activation of his emergency lights "made the stop a seizure, thus implicating the [defendant's] 4th Amendment rights." We are unsure how to interpret this reasoning. First, it is not clear what distinction the court saw between a "seizure" and a "stop" and why the court believed that it was relevant to whether MacAdam's actions were a proper community-caretaking exercise. Second, the court's finding that there was a seizure and that defendant's fourth amendment rights were

implicated seems, on the surface, redundant. The court had already determined that MacAdam's activation of his emergency lights effected a seizure. This was, necessarily, a finding that fourth amendment rights were implicated and that the State needed to justify the infringement on defendant's freedom. Indeed, the court did consider whether there was reasonable and articulable suspicion for the intrusion. Perhaps the reason the court later reiterated that the encounter was a seizure was that the court believed the encounter was *ipso facto* not a proper community-caretaking exercise, because it was nonconsensual. If this was the court's rationale, it was erroneous. As the supreme court in *Luedemann* clarified, the community-caretaking doctrine justifies not consensual encounters–which need no justification under the constitution–but seizures. See *Luedemann*, 222 Ill. 2d at 548 ("It is clear, then, that the 'community caretaking' doctrine is analytically distinct from consensual encounters and is invoked to validate a search or seizure as reasonable under the fourth amendment."). The error that *Luedemann* corrected was at one time prevalent in the appellate court, including this district. For instance, our decision in *Lee*, which defendant cited below and continues to cite on appeal, committed the error. See *Lee*, 291 Ill. App. 3d at 54 ("Once a seizure has occurred, an officer is not acting in his community caretak[ing] function, even if his original intention had nothing to do with detection or investigation of a crime.)." *Lee*'s conception of community-caretaking encounters was abandoned by this district even before *Luedemann* was decided in 2006. See *People v. Mitchell*, 355 Ill. App. 3d 1030, 1033 (2nd Dist. 2005) (noting that the community-caretaking doctrine "has nothing to do with consensual encounters; for, by their very nature, consensual encounters need no justification. Treating it as synonymous with consensual encounters deprives the doctrine of any analytical content.").

¶ 18    An alternative, but less plausible, construction of the trial court's remarks is that the court was saying that MacAdam's actions failed as a community-caretaking exercise, not because they effected a seizure, but because they lacked a proper public-safety rationale.

¶ 19    This reasoning, too, would have been erroneous, but not as obviously so as the prior alternative. First, as a general matter, Illinois cases have recognized that police have a valid public-safety reason for investigating vehicles stopped along roadways and that the activation of emergency lights is consistent with this purpose. The State cites several of these decisions, including *McDonough*, *Robinson,* and *Laake*.

¶ 20    In *McDonough*, 239 Ill. 2d at 262, the officer came upon a car at 7:30 p.m. stopped on the river-side shoulder of Route 100, a four-lane road along the Mississippi River. The officer decided to check whether the occupants of the car needed assistance. *Id.* As the officer pulled onto the shoulder behind the car, he activated his emergency lights because, as the officer testified, it was dark and there was "heavy traffic." *Id.* at 262-63. The officer spoke to the defendant and, " '[w]ithin a matter of seconds,' " came to believe that he was intoxicated. *Id.* at 263. As in the present case, the State conceded that the defendant was seized when the officer activated the emergency lights. *Id.* at 271.

¶ 21    The supreme court in *McDonough* held that the seizure was justified on community-caretaking grounds. Applying a two-part test (quoted above), the court held, first, that the officer's actions were unrelated to the investigation of crime, as the officer approached the car "to offer any aid required under the circumstances" and activated his emergency lights

because it was dark and there was heavy traffic. *Id.* at 273. Second, the officer's actions were reasonably related to public safety, as it "was reasonable for [the officer] to approach defendant's vehicle to offer any aid required under the circumstances." *Id.* The court explained:

"The public has a substantial interest in insuring that police offer assistance to motorists who may be stranded on the side of the highway, especially after dark and in areas where assistance may not be close at hand. [Citation.] In the proper performance of his or her duties, a law enforcement officer has the right to make a reasonable investigation of vehicles parked along roadways to offer such assistance as might be needed and to inquire into the physical condition of persons in vehicles. The occupant of a parked vehicle may be intoxicated, suffering from sudden illness, or may be only asleep. Under these circumstances, it is within a responsible law enforcement officer's authority to determine whether assistance is needed. [Citations.] Further, it was objectively reasonable for [the officer] to activate his emergency lights, not only for his safety, but also for the safety of defendant and passing traffic. [Citation.]." *Id.* at 273-74.

¶ 22    In *Laake*, 348 Ill. App. 3d at 348, at 3 a.m. the officer came upon a car parked on the shoulder of a road. The area was "isolated and not well lighted" and was near a curve. The officer activated his emergency lights and approached the car. *Id.* In speaking with the defendant, the officer saw signs of intoxication and smelled the odor of an alcoholic beverage. *Id.* The appellate court held that the officer's activation of his emergency lights effected a seizure of the defendant, but a justified one. *Id.* at 350. Although the officer, just prior to seeing the defendant's car, had received a report of a possibly intoxicated driver in the area, this fact was not mentioned in the court's analysis, which focused solely on whether the officer's stopping behind the car and speaking with the defendant was legitimate community-caretaking activity. The court said:

"[The officer] testified that his purpose in stopping behind the [car] was to check on the welfare of [the] driver. We see nothing wrong with this purpose. Police officers routinely provide roadside assistance in addition to conducting criminal investigation. Such assistance is designed to ensure public safety, and we do not believe that any concomitant technical detention is unreasonable." *Id.*

¶ 23    Finally, in *Robinson*, 368 Ill. App. 3d at 965, officers responded to a call at 2:21 a.m. to check on the well-being of a driver slumped over the steering wheel of a car parked in front of a residence. The appellate court held that it was within their community-caretaking function for the police to stop–emergency lights activated–behind the parked car, open the driver's door, and jostle the driver awake. *Id.* at 972-73.

¶ 24    The case at hand is, we acknowledge, factually identical to none of these cases. It is also true, however, that none of them purports to set a factual threshold for a proper community-caretaking exercise. Such restraint is consistent with "the *sui generis* nature of fourth amendment jurisprudence." *People v. Flores*, 371 Ill. App. 3d 212, 222 (2007). The record in this case demonstrates that MacAdam engaged in valid community-caretaking activity. According to MacAdam's stipulated testimony, he stopped "to check if the vehicle was having mechanical problems, or if there were problems with the occupants." Under prong

-7-

one of *McDonough*, we hold that the circumstances, viewed objectively, show that MacAdam indeed was pursuing some aim other than the detection, prevention, or investigation of crime. MacAdam witnessed a car slow to a stop on a roadway shoulder and then the driver and the passenger switch positions as if the passenger now intended to drive. We agree with the State that these actions could prompt in a peace officer a genuine concern for the welfare of the occupants. MacAdam might have been concerned that the occupants switched positions because the driver was experiencing mechanical problems with the vehicle and needed the passenger's assistance, or because the driver himself was suffering from an impairment and could no longer drive.

¶ 25 Defendant argues that, in two respects, MacAdam's actions exceeded what was necessary for mere community-caretaking activity and, therefore, he must have had another purpose. First, defendant asserts that MacAdam's use of his emergency lights was needless because he "could have simply used his hazard lights or his amber colored lights to signal to other drivers on the roadway that the two vehicles were on the side of the road." Second, defendant suggests that MacAdam served no public-safety purpose in providing the dispatcher with the make, model, and license plate number of defendant's car.

¶ 26 We disagree on both counts. The question under prong one of *McDonough* is not how regularly the police conduct in question occurs as part of crime detection, investigation, or prevention, but whether the conduct is, in the context at issue, so lacking an objectively grounded public-safety purpose that the officer could not be "performing some function other than the investigation of a crime" (*McDonough*, 239 Ill. 2d at 272).

¶ 27 First, as *McDonough* expressly recognizes, and as *Robinson* and *Laake* imply, use of emergency lights is not *per se* an act of crime detection. A squad car is equipped with other lights, but none are so obvious when lit as are emergency lights. We acknowledge that where defendant was stopped may have differed, in such conditions as ambient light and traffic volume, from where the stops in *McDonogh*, *Laake*, and *Robinson* occurred. The differences are not material. It suffices that the ambient light was dim and that there was passing traffic. (Indeed, it seems to us that, on any roadway where there is even potential traffic, it is reasonable for a police officer to activate his emergency lights while stopped to check on a parked vehicle.)

¶ 28 Second, MacAdam's informing the dispatcher of the make, model, and license plate number of defendant's car was also consistent with a public-safety purpose. We acknowledge that, as defendant notes, the dispatcher receiving this information can verify for the officer whether the vehicle registration is valid and whether the individual listed on the registration has a valid driver's license or any outstanding warrants. However, just because the police frequently convey such information to the dispatcher while in a crime-detection mode does not entail that they may never legitimately do so outside that mode. *Cf. People v. Blankenship*, 353 Ill. App. 3d 322, 324 (2004) ("Police may conduct a computer check of a license plate without first observing a traffic violation.") (citing *People v. Brand*, 71 Ill. App. 3d 698, 699 (1979)). An officer's providing dispatch information about a subject vehicle has the public-safety benefit of enabling the dispatcher to track the officer's location and activities in case, for instance, the officer or an occupant of the vehicle goes missing. Defendant points to nothing in the record to suggest that, viewed objectively, MacAdam's

relay of the information to dispatch did not have this purpose.

¶ 29 Under the second prong of *McDonough*, we hold that it was a reasonable public-safety endeavor for MacAdam to check on the stopped vehicle. We recognize that, unlike in the cases cited by the State, MacAdam did not come upon a vehicle already at rest, without knowledge of how long it had been there (*McDonough*, *Laake*), or have specific information that the driver might be impaired or in distress (*Robinson*). The vehicle came to a stop while MacAdam observed it, and he had no specific information about the travelers aside from what he saw. Nonetheless, MacAdam had reason to believe that the occupants might need assistance. Even if MacAdam could not be certain that there was an emergency, his lack of certainty had to be weighed against the likelihood that, if he did not stop to inquire, the travelers would not receive assistance for some time, given the rural location. MacAdam had also to consider the potential hazards to the travelers from passing traffic, given that no lights were activated on their car despite the dim ambient light.

¶ 30 The public interest served by MacAdam's actions more than outweighed the intrusion. See *McDonough*, 239 Ill. 2d at 272 (court must balance a citizen's interest in being free from police intrusion against the public interest in having police perform services in addition to crime detection and prevention); *State v. Crawford*, 659 N.W.2d 537, 543 (Iowa 2003) ("[T]he court must balance the public need and interest against the degree and nature of the intrusion upon the citizen's privacy."). The video of the stop shows that approximately 36 seconds elapsed between MacAdam's activating his emergency lights and reaching the driver's door of the car–at which point, defendant does not contest, MacAdam made observations that justified further detention of defendant, resulting ultimately in his arrest. There was an ample public-safety justification for those 36 seconds.

¶ 31 Defendant claims that this case is "almost identical" to *People v. Isaac*, 335 Ill. App. 3d 129, 131 (2002), where this district held that it was not legitimate community-caretaking activity for the officer to stop the defendant's vehicle to see why he was driving under the speed limit. Defendant argues that, because the stop in *Isaac* and the stop in this case were motivated by similar concerns in similar circumstances, we should hold that MacAdam's actions did not fall within the community-caretaking doctrine. Defendant misreads *Isaac*. Our holding in *Isaac* was that the encounter was by definition not a community-caretaking encounter, because it was nonconsensual. See *Isaac*, 335 Ill. App. 3d at 133 ("Community caretaking is based on the assumption of a voluntary encounter, and the traffic stop removed this case from its ambit."). For that holding, we relied on *Lee*. See *id.* (citing *Lee*, 291 Ill. App. 3d at 53). These portions of *Lee* and *Isaac* were abrogated by *Luedemann*, which, as we noted, held that the community-caretaking doctrine justifies not voluntary encounters, which need no justification, but seizures. In *Isaac*, we looked no further into the encounter than to determine that it was a seizure. *Isaac,* therefore, is of no use to defendant in evaluating MacAdam's actions, except perhaps to say that they effected a seizure, which defendant does not contest in any event.

¶ 32 Based on the foregoing, we hold that the trial court erred in holding that MacAdam's seizure of defendant was not a legitimate community-caretaking exercise. The trial court erred, therefore, in granting the motion to quash and suppress.

¶ 33        II. Case Number 2–09–1304: Rescission of the Summary Suspension

¶ 34        In conjunction with his September 7, 2008, arrest for DUI, defendant was given notice that his driving privileges would be summarily suspended for a minimum of six months. On September 22, 2008, the Secretary of State confirmed the suspension, with an effective date of October 23, 2008, and a provisional reinstatement date of October 23, 2011.

¶ 35        Section 2–118.1(b) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/2–118.1(b) (West 2008)) allows a driver 90 days from a notice of summary suspension to file a petition to rescind the suspension. On October 2, 2009, over a year after the notice of the suspension, defendant asked for leave to file a petition to rescind the suspension. The petition recited that, when the suppression hearing was held, "it was the understanding of all parties that, for all intents and purposes, the hearing encompassed all matters relating to the arrest, including the propriety of the statutory summary suspension." The petition alleged no ground for rescission independent of the grounds on which defendant had sought, and the trial court had ordered, suppression. The motion for leave to file the late rescission petition was heard the same day it was filed. Over the State's objection, the trial court, relying on Illinois Supreme Court Rule 183 (eff. Jan. 1, 1967), granted defendant leave to file his petition to rescind. This exchange followed:

> "THE COURT: Are you ready to proceed [on the petition to rescind,] then?
>
> MR. HAY [Assistant State's Attorney]: State will proceed on the petition to rescind.
>
> THE COURT: Are you ready to proceed on that?
>
> MR. HUMPHREY [defense counsel]: Yes, your Honor.
>
> THE COURT: Essentially, it's just a rehash of the motion to quash; right?
>
> MR. HAY: At this point[,] State would stipulate to the testimony at the motion to quash any evidence.
>
> MR. HUMPHREY: Likewise, your Honor. We would argue that there was[*sic*] no reasonable grounds to place [defendant] under arrest and that would be the basis for recision [*sic*]."

Granting the petition to rescind, the court said:

> "All right. Based on the stipulated facts and the ruling that this Court rendered previously, I'm granting the motion to quash arrest.[2] I will also then, over the State's objection, grant the petition to rescind [the] statutory summary suspension."

In its written order, the court stated that its reason for granting the petition was that the State failed to show that MacAdam had reasonable grounds to believe that defendant was under the influence.

¶ 36        The State filed a motion to reconsider, which the trial court denied. The State then filed a timely appeal.

¶ 37        As an initial matter, we note that the State Appellate Defender was appointed as counsel

---

[2]Actually, the court had already granted the motion to quash and suppress.

-10-

in case number 2–09–1112 (the State's appeal from the suppression order), but not in case number 2–09–1304 (the State's appeal from the rescission order). Defendant did not retain private counsel in case number 2–09–1304 and makes no response to the State's challenge to the rescission order. Though we lack a response brief in case number 2–09–1304, we nonetheless address the issues. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) ("[I]f the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal.").

¶ 38    The State argues that Rule 183 gave the trial court no authority to enlarge the time for filing a petition to rescind under section 2–118.1(b). Rule 183 states:

> "The court, for good cause shown on motion after notice to the opposite party, may extend the time *for filing any pleading or the doing of any act which is required by the rules to be done* within a limited period, either before or after the expiration of the time." (Emphasis added.) Ill. S. Ct. R. 183 (eff. Jan. 1, 1967).

The State asserts that, because the 90-day limitation for filing a petition to rescind is specified by statute, not by supreme court rule, that period cannot be enlarged by the trial court under Rule 183.

¶ 39    As this district has previously observed, Rule 183 "[b]y its plain terms *** applies only to the time limits for pleadings and to time limits that have been set by the supreme court rules." *In re Marriage of Singel*, 373 Ill. App. 3d 554, 556-57 (2007) (citing *Robinson v. Johnson*, 346 Ill. App. 3d 895, 905 (2003) (Rule 183's "plain language indicates that it only applies to the time limits set forth by the Illinois Supreme Court rules"; Rule 183 "simply does not apply to a statutory time limit")). *Singel* held that Rule 183 does not allow an enlargement of the time specified by section 2–1203(a) of the Code of Civil Procedure (735 ILCS 5/2–1203(a) (West 2004)) for the filing of a postjudgment motion. *Singel*, 373 Ill. App. 3d at 556-57. Neither *Robinson* nor *Singel*, however, addressed whether it is possible to interpret the modifier "required by the rules" as applying only to "any act," leaving the trial court the authority to enlarge the time for filing any pleading regardless of whether its filing period is specified by supreme court rule or by statute. See *In re E.B.*, 231 Ill. 2d 459, 467 (2008) ("The last antecedent doctrine, a long-recognized grammatical canon of statutory construction, provides that relative or qualifying words, phrases, or clauses are applied to the words or phrases immediately preceding them and are not construed as extending to or including other words, phrases, or clauses more remote, unless the intent of the legislature, as disclosed by the context and reading of the entire statute, requires such an extension or inclusion."). At the same time, we note that in, *Stephens v. Kasten*, 383 Ill. 127, 134 (1943), the supreme court, construing the predecessor of Rule 183, said unqualifiedly that the rule does not permit the enlargement of "limitation periods fixed by a statute." This seems to suggest that Rule 183 gives no authority to enlarge *any* time limitation fixed by statute. Even if, despite *Stephens*, we were prepared to construe Rule 183 as applying to "any pleading," there would be the further question of whether defendant's petition to rescind was a "pleading" under the rule. "A pleading *** consists of a party's formal allegations of his claims or defenses," but "[a] motion is an application to the court for a ruling or an order in a pending case." *In re Marriage of Sutherland*, 251 Ill. App. 3d 411, 413 (1993) (citing

Black's Law Dictionary 1152 (6th ed. 1990)). Moreover, Rule 183 allows relief only for "good cause shown."

¶ 40    The State, however, questions neither that the petition to rescind was a "pleading" nor that defendant showed "good cause," but relies on the more fundamental position that Rule 183 has no application to pleadings for which the filing period is provided by statute. The State further argues that, even if the petition was properly received, the trial court's rescission of the suspension was erroneous on the merits. We need not resolve any of these issues of textual interpretation, since we agree with the State that, even if the petition to rescind was properly before the court, the court erred in its adjudication of the petition.

¶ 41    In a statutory-summary-suspension proceeding, the defendant has the initial burden to demonstrate by a preponderance of the evidence a *prima facie* case for rescission of the suspension. *People v. Ehley*, 381 Ill. App. 3d 937, 943 (2008). If the defendant establishes a *prima facie* case, the burden then shifts to the State to present evidence justifying the suspension. *Ehley*, 381 Ill. App. 3d at 943. We review a ruling on a petition to rescind using the same standard of review applicable to suppression rulings. *People v. Wear*, 229 Ill. 2d 545, 561 (2008). Because there is no issue of historical fact relevant to the ground on which we reverse the rescission, namely that MacAdam had a valid community-caretaking purpose in checking on the occupants of the stopped car, we review the trial court's ruling *de novo*. *Gilbert*, 347 Ill. App. 3d at 1038.

¶ 42    As noted, at the rescission hearing defendant asserted that MacAdam lacked "reasonable grounds to place [defendant] under arrest." One of the grounds on which a summary suspension may be rescinded is that "the officer had [no] reasonable grounds to believe that the person was driving or in actual physical control of a motor vehicle upon a highway while under the influence." 625 ILCS 5/2–118.1(b)(2) (West 2008). This statutory ground is separate from the constitutional ground for rescission that concerns the propriety of the initial traffic stop. See *People v. Safiran*, 229 Ill. App. 3d 639, 640 (1992) ("Although statutory summary suspension hearings are limited to certain statutory issues [citation], the propriety of the underlying stop may always be considered [citation]."). Nonetheless, it appears that defendant did not intend to raise at the rescission hearing any ground other than what he had alleged for suppression, namely, that MacAdam had no justification for the traffic stop. Notably, the petition for rescission referenced what defendant believed was the parties' understanding that there was overlap between the suppression and rescission issues. The petition raised no independent argument for rescission. Moreover, defendant did not elaborate on his assertion at the rescission hearing that there were "no reasonable grounds to place [defendant] under arrest." It is proper to conclude that defendant did not expound his reasons precisely because he intended only to incorporate the argument he had made for suppression, and that his choice of words at the rescission hearing was an attempt to mold that prior argument into the language of section 2–118.1(b) of the Vehicle Code.

¶ 43    Likewise, the court's written order granting the petition to rescind stated that Deputy MacAdam lacked reasonable grounds to believe that defendant was under the influence of alcohol. The court did not elaborate on why it believed that MacAdam lacked reasonable grounds. The court's oral ruling, however, incorporated by reference the court's reasons for granting the motion to quash and suppress. As we saw in Part I of this opinion (addressing

-12-

case number 2–09–1112), the court believed that the community-caretaking doctrine did not justify MacAdam stopping behind defendant's car, with his emergency lights activated. A lack of justification for the underlying traffic stop is a proper ground for rescission of a summary suspension. *People v. Hacker*, 388 Ill. App. 3d 346, 350 (2009). However, the court's reasoning at the suppression hearing was, as we noted, ambiguous. The court may have believed that the encounter was not proper community-caretaking activity simply because MacAdam's actions amounted to a seizure. This would have directly conflicted with *Luedemann*. An alternative, but less plausible, reading of the trial court's remarks is that the court was saying that the constitutional defect in MacAdam's actions was not that they effected a seizure but that they lacked a valid public-safety purpose. This, too, would have been erroneous, as we explained in Part I. We conclude, then, that even if it was proper for the trial court to allow the petition to rescind, the court's reasons for rescinding the summary suspension were, however construed, erroneous.[3]

¶ 44                                    III. Conclusion

¶ 45       For the foregoing reasons, we reverse the judgments of the circuit court of Stephenson County (1) quashing defendant's arrest and suppressing evidence, and (2) rescinding defendant's summary suspension. We remand for further proceedings consistent with this opinion.

¶ 46       Reversed and remanded.

---

[3]Rescission would have been improper even if the trial court's decision could be construed as based on what the court perceived as a lack of reasonable grounds to believe that defendant was under the influence. The video of the stop shows defendant slurring his words, struggling to keep his balance, and failing sobriety tests. MacAdam thus had reasonable grounds to believe that defendant was under the influence.