# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Mains*, 2012 IL App (2d) 110262

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. SCOTT E. MAINS, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-11-0262 |
| Filed | May 11, 2012 |
| Rehearing denied | May 31, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in quashing defendant's arrest for aggravated driving while his license was revoked, since his arrest was justified under the community caretaking exception to the warrant requirement where defendant was driving a malfunctioning vehicle, his flashers were on, he was traveling slowly before he pulled into a private driveway, parked and then began examining the engine, and the arresting officer stopped to check on defendant and inquire as to whether he needed assistance, and the mere fact that the officer asked defendant for identifying information did not warrant a conclusion that he was conducting a criminal investigation. |
| Decision Under Review | Appeal from the Circuit Court of Boone County, No. 10-CF-265; the Hon. John H. Young, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Michelle J. Courier, State's Attorney, of Belvidere (Lawrence M. Bauer and Jay Paul Hoffmann, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
|---|---|
| | Thomas A. Lilien and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellee. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Presiding Justice Jorgensen and Justice McLaren concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Scott E. Mains, was charged with aggravated driving while his license was revoked (625 ILCS 5/6-303(d-2.5) (West 2010)). Defendant successfully moved to quash his arrest. The State appeals. For the reasons that follow, we reverse and remand.

¶ 2                                BACKGROUND

¶ 3    At the hearing on the motion to quash, Officer Jonathan Kaplan of the Belvidere police department gave the following testimony. On the afternoon of May 2, 2010, he was driving south on Appleton Road. Appleton Road was a four-lane road, with two lanes heading in each direction, and the speed limit on the road was 35 miles per hour. The weather was clear, and there was moderate traffic. As he was driving, Kaplan noticed a sport-utility vehicle traveling north at a very slow rate of speed with its hazard lights flashing. Kaplan estimated that the vehicle was traveling at approximately 20 or 25 miles per hour. There were no hazards on the road, nor did Kaplan observe any other reason for the vehicle to be traveling with its hazard lights flashing. Kaplan performed a U-turn to follow the vehicle. After he did so, the vehicle pulled into a private driveway. As Kaplan pulled into the driveway behind the vehicle, defendant got out of the vehicle and proceeded to the front of the vehicle, opened the hood, and began inspecting the engine. Kaplan parked his car and activated his emergency lights.

¶ 4    When Kaplan approached defendant, he asked for defendant's name and date of birth. Defendant gave him the information, and Kaplan ran the information while Detective Woody spoke with defendant. Anytime Kaplan conducted a traffic stop or assisted a motorist, he would make sure that the driver had a valid driver's license and no outstanding warrants. Kaplan learned that defendant did not have any outstanding warrants but that his driver's license was revoked. Kaplan returned to defendant and placed him under arrest for driving while his license was revoked.

¶ 5    After placing defendant in the back of his squad car, Kaplan advised the female passenger of defendant's vehicle that defendant was under arrest and that the vehicle would have to be removed from the driveway. The woman did not request any assistance, but instead told Kaplan that she would try to drive the vehicle home.

¶ 6    Although Kaplan was unable to confirm it, defendant told Kaplan that there was something wrong with one of the belts in the vehicle's engine. Kaplan did not see any apparent defects with the vehicle. Kaplan issued defendant a citation for driving while his license was revoked and one for driving with his hazard lights flashing.

¶ 7    Dawn Brewer, defendant's long-time girlfriend, testified as follows. On the afternoon of May 2, 2010, she, defendant, and their daughter went to Brewer's mother's house. As they were on their way home, Brewer was driving when their vehicle started "chugging." Brewer pulled into a church parking lot, where defendant looked under the hood. Brewer drove the vehicle around the parking lot in hopes that it would drive better, but it did not, so after defendant looked under the hood again, she asked him to drive the rest of the way home. She knew that defendant's license was revoked but asked him to drive anyway because she was scared to do so herself. While on Appleton Road, they drove slowly and with the hazard lights flashing. Aside from the fact that the vehicle was "chugging" and "not wanting to move," there were no indications that the vehicle was experiencing mechanical problems. They had traveled approximately one block from the church parking lot when they pulled into a driveway because the vehicle was still performing poorly. While they were parked in the driveway, a police car pulled in behind them with lights flashing.

¶ 8    The officers got out of their vehicle and proceeded to the front of Brewer's vehicle, where defendant was working under the hood. Although she could not hear what was being said, Brewer observed defendant and the officers conversing. The officers then placed defendant in handcuffs, and defendant told Brewer to get out of the vehicle because he was being arrested. Brewer asked the officers if, before he was taken to jail, defendant could replace the air filter that had been removed, but the officers said no. She then asked if one of them would replace the filter, and again they said no. She did not ask for, nor was she offered, a tow. The officers also did not ask how she was going to get home or what she was going to do. After waiting approximately 30 minutes for her son to come help her, Brewer was able to get the vehicle started and drive herself home.

¶ 9    The State argued that Kaplan's stop of defendant was valid as either an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968), or as part of Kaplan's community caretaking function. The trial court disagreed, concluding that defendant's use of his flashing hazard lights was legal because the vehicle was experiencing mechanical problems, thus precluding a *Terry* stop. In addition, the trial court found that the fact that Kaplan first asked for defendant's identifying information and did not offer Brewer any assistance indicated that Kaplan was investigating a crime rather than engaging in community caretaking. Accordingly, the trial court granted defendant's motion to quash.

¶ 10    Following an unsuccessful motion to reconsider, the State filed a certificate of impairment and brought this timely appeal.

¶ 11                                    ANALYSIS

¶ 12          On appeal, the State argues that the trial court erred in granting defendant's motion to quash, because Kaplan's traffic stop of defendant was justified under *Terry* or as part of Kaplan's community caretaking function. In reviewing a trial court's decision on a motion to quash, we apply a two-part standard of review. First, the trial court's factual findings are given great deference and will be disturbed only if they are against the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). Second, the trial court's ultimate legal conclusion is reviewed *de novo*. *Luedemann*, 222 Ill. 2d at 542. We conclude that the stop was a valid exercise of Kaplan's community caretaking function.

¶ 13          Community caretaking is an exception to the fourth amendment's warrant requirement and is used to "uphold searches or seizures as reasonable under the fourth amendment when police are performing some function other than investigating the violation of a criminal statute." *People v. McDonough*, 239 Ill. 2d 260, 269 (2010). The community caretaking exception applies where (1) the officer is performing a function other than the investigation of a crime, and (2) the search or seizure was reasonable because it was undertaken to protect the safety of the general public. *McDonough*, 239 Ill. 2d at 272. Both criteria are determined objectively. *McDonough*, 239 Ill. 2d at 272. Moreover, "[t]he court must balance a citizen's interest in going about his or her business free from police interference against the public's interest in having police officers perform services in addition to strictly law enforcement." *McDonough*, 239 Ill. 2d at 272.

¶ 14          Viewed objectively, the evidence presented in this case demonstrates that defendant was driving a malfunctioning vehicle down a multilane road with moderate traffic. His emergency flashers were on, and he was traveling at a very slow rate of speed, nearly 10 to 15 miles per hour under the posted speed limit. He then pulled into a private driveway and began examining the vehicle's engine. From these facts, it is objectively reasonable that Kaplan would stop to check on defendant and see if he required assistance. The malfunctioning vehicle and defendant's slow rate of speed on a well-traveled road presented a danger to other motorists. Although defendant had removed the vehicle from the public roadway by the time that Kaplan pulled up behind him, Kaplan could not have known whether the driveway belonged to defendant, and the vehicle's return to the public roadway would have renewed the danger to other motorists. See *People v. Dittmar*, 2011 IL App (2d) 091112, ¶ 24 (the officer's stop of the defendant was justified under the community caretaking exception because the defendant's actions of pulling his vehicle to the side of the road and switching positions with the passenger gave the officer reason to believe that the defendant might need assistance due to a mechanical problem or other emergency).

¶ 15          The fact that Kaplan asked for defendant's identifying information does not necessitate a conclusion that Kaplan was conducting a criminal investigation, as an officer may request identification from an individual during even a consensual encounter. *Luedemann*, 222 Ill. 2d at 551; see also *People v. Robinson*, 368 Ill. App. 3d 963, 973 (2006) (officer was engaged in community caretaking when, after rousing the unconscious defendant, he asked him to step out of his vehicle and to produce identification). Further, Kaplan's asking for defendant's identifying information had the safety benefit of allowing Kaplan to know whom he was dealing with, should defendant attempt to harm one of the officers or flee. *Cf.*

*Dittmar*, 2011 IL App (2d) 091112, ¶ 28 (concluding that the officer's transmission of the defendant's vehicle information to the police dispatcher served the safety purpose of allowing the dispatcher to track the officer's location and activities, should the officer or a vehicle occupant go missing).

¶ 16 Because we conclude that Kaplan's stop of defendant was justified under the community caretaking exception, we need not address the State's contention that the stop was alternatively justified as an investigatory stop under *Terry*.

¶ 17                                     CONCLUSION

¶ 18 For the reasons stated, the judgment of the circuit court of Boone County is reversed, and the matter is remanded for further proceedings.

¶ 19 Reversed and remanded.